[S. F. No. 17035.   In Bank.   Apr. 16, 1946.]

A. M. MONHEIT, Respondent, v. ANTONIO CIGNA et al.,
Defendants; R. B. BERNARD, Appellant.

Rode, Burnhill & Rode and Lincoln Rode for Appellant.

Edwin E. Grant for Respondents.

Robert W. Kenny, Attorney General, John L. Nourse, Deputy Attorney General, Harold W. Kennedy, County Counsel (Los Angeles), A. Curtis Smith, Deputy County Counsel, and Henry McClernan, City Attorney (Glendale), as Amici Curiae on behalf of Respondents.

CARTER, J.—Plaintiff commenced this action against defendants to quiet title to real property, basing his title on the following: The county taxes for the fiscal year 1928-1929 on the property became delinquent and the property was "sold to the state" pursuant to section 3771 of the Political Code. On July 16, 1934, the tax collector deeded the property to the state under section 3785 of the Political Code. On July 15, 1940, the tax collector sold the property to plaintiff under chapter VIIIa of title IX of part III of the Political Code, and the property was thereupon deeded by the state to plaintiff. Defendant and cross-complainant Bernard based his claim to the property on the following: In 1927 street improvement bonds were issued by the city of Oakland against the property pursuant to part III of the Improvement Act of 1911 (Stats. 1911, p. 730; Deering's Gen. Laws, 1937, Act 8199). The installments payable under the bonds were not paid on or after January 2, 1928. Defendant, holder of the bonds, procured a sale of the property by the city treasurer on October 16, 1940. He purchased the property and received a certificate of sale therefor on October 16, 1940, and on December 12, 1941, under the Improvement Act of 1911, a deed was executed by the city treasurer and delivered to him. The court gave judgment declaring plaintiff to be the

owner of all rights acquired by the state under the deed to it, subject to the rights of defendant, and defendant to be the owner subject to plaintiff's rights. Each party claims sole ownership to the exclusion of any rights in the other. The issue is therefore one involving the respective rights of the parties in property acquired by one at a sale for delinquent county taxes and the other at a sale for delinquent special assessments levied by a city.

At the time the property was deeded to the state (1934) section 3787 of the Political Code provided: (referring to deeds to the state under § 3785) "Such deed conveys to the state the absolute title to the property described therein, free of all encumbrances, except any lien for taxes levied for municipal, or for irrigation, reclamation, protection, flood control, public utility or other district purposes, or for special assessments which are collected on tax-rolls, and except any lien or assessment for other amounts which by law are collected upon tax-rolls by or for account of municipalities, and except interest and penalties on the same, and other amounts which would be paid municipalities or for their account in the event of redemption of such property from sales for such taxes, assessments or other amounts, . . ." That section was repealed in 1939, effective February 1, 1941, when the Revenue and Taxation Code became operative (Stats. 1939, ch. 154). Its provisions were carried into the Revenue and Taxation Code (Rev. & Tax. Code, § 3520). It (§ 3787) was in effect at the time of the deed from the state to plaintiff (1940). At the time the property was deeded to the state (1934), the sections controlling a deed from the state to the purchaser of property that had been previously deeded to the state were 3897 and 3898 of the Political Code. Section 3897, as amended in 1933 and 1934 (Stats. 1933, p. 2586; Stats. Ex. Sess., 1934, p. 22) provided that no sale could be made of lands deeded to the state situated in another taxing agency which has taken title to the land if the agency objects. If no objection is made, the proceeds are divided among the agencies and the deed (given under § 3898) shall convey title "free and clear of all liens, taxes, assessments or encumbrances of any kind or character whatsoever levied or assessed or liened on the property which are due" at the time of the sale. (Pol. Code, § 3897.) Those sections were again amended in 1935 (Stats. 1935, pp. 1437, 1441) and

section 3898 in 1937 (Stats. 1937, ch. 916) with no change here pertinent. In 1939 those sections were repealed effective February 1, 1941. (Stats. 1939, ch. 154.) However, at the same session section 3897 was repealed effective September 15, 1939, and sections 3833 to 3836.2 were added to the Political Code to be effective until the Revenue and Taxation Code became operative. (Stats. 1939, ch. 529.) They made provision for notice to other taxing agencies similar to section 3897, but stated that if consent was withheld the sale could proceed but it would have no effect on the agencies' liens for taxes or assessments. If they consented, the sale would cancel their liens but they would share in the proceeds. (Pol. Code, § 3833.4; Stats. 1939, ch. 529, § 2.) The deed from the state to the purchaser vested title "absolutely in the grantee free of all encumbrances of any kind existing before the sale, except: (a) Any lien for installments of assessments, which installments will become due after the time of the sale; (b) The lien for taxes or assessments or other rights of any taxing agency, which does not consent to the sale under this chapter; (c) Any lien for direct assessments." (Pol. Code, § 3836.1; Stats. 1939, ch. 529, § 2.) ". . . 'direct assessment' means an assessment levied by a district the bonds of which are secured by assessments levied on a particular parcel of land described in the bond." (Pol. Code, § 3833.2; Stats. 1939, ch. 529, § 2.)

The Improvement Act of 1911, as amended in 1923, when the bonds were issued upon which Bernard's right is predicated (Stats. 1911, p. 730), provided for the issuance of bonds secured by assessments levied to pay for local improvements. The assessment "shall be a first lien upon the property affected thereby until the bond issued for the payment thereof . . . shall be fully paid." (Improvement Act of 1911, § 66.) If the bonds are not paid the treasurer of the city sells the property and upon sale the purchaser has a lien and receives a certificate of purchase. After the lapse of a year's period of redemption he receives a deed which conveys: "Absolute title to the lands described therein, as of the date of the expiration of the period for redemption, free of all encumbrances, except the lien for State, county and municipal taxes." (Stats. 1911, p. 730, as amended, § 75.) That provision remained the same until its repeal in 1941 when it was made a part of the Streets and Highways Code. (Stats. 1941, ch. 79; Sts. & Hy. Code, § 6555.)

It is thus apparent that, insofar as the Political Code sections dealing with priorities between special assessments and general tax liens are concerned, during the entire time here involved a deed *to the state* preserved special assessment liens. However, at the time the deed here involved was made *to the state*, a deed *from the latter* to a private purchaser, if it had been made, would have conveyed title free from the special assessment lien. In other words, the deed from the state gave the purchaser rights superior to those held by the state by virtue of the deed to it. This provision for the acquisition of greater rights was altered between 1939 and 1941, the period when the deed from the state conveying the property here involved was given, by preserving the special assessment lien where the deed was from the state as well as where it was to the state. This same thought is expressed in the subsequent statutes. (Rev. & Tax. Code, §§ 3520, 3712, 3900.) The general policy is thus declared: "It is hereby declared to be the policy of the State and the intent of the provisions in this code contained, that the final tax deed or deeds of all taxing agencies, including counties, cities and counties, cities, irrigation districts, reclamation districts, and other taxing agencies that annually levy, assess and collect taxes or assessments upon real property within the State, should be and they are hereby declared to be upon a parity with each other, and that regardless of when the levy of such taxes or assessments is or has been made, and regardless of when the final tax deed or assessment deed is or has been taken by such taxing agency, that the rights of all taxing agencies and all such deeds shall be equal and upon a parity with each other." (Rev. & Tax. Code, § 3900.) If it be assumed that the rule giving priority to general tax deeds from the state of tax-deeded property over special assessments as it existed in 1934 when the property was deeded to the state (Pol. Code, § 3897) is applicable though the deed from the state was not given until after that priority ceased by reason of the change in the law (Pol. Code, § 3836.2), we have the counteracting provisions in the Improvement Act of 1911, that the assessment shall be a first lien on the property and the deed given to a purchaser after a sale for delinquency in the assessment shall convey the property clear of all other liens except for the lien of county taxes. The effect of those varying provisions in regard to the priority of the two liens and rights under deeds given upon sales for delinquency thereunder has been settled in this state and is

that of parity and equality. That was determined in *La Mesa etc. Irr. Dist.* v. *Hornbeck,* 216 Cal. 730 [17 P.2d 143]. (See, also, *Neary* v. *Peterson,* 1 Cal.2d 703 [37 P.2d 82].) In the La Mesa case, property had been deeded to irrigation districts after sale for delinquent assessments levied by the districts, where there were unpaid county taxes against the property and some of the property had been previously and some subsequently deeded to the state pursuant to section 3785 of the Political Code. The irrigation district law provided that a deed of property for delinquent assessments conveyed "absolute title . . . free of all encumbrances." The court stated the controlling rule to be that in the absence of statute a lien for general state or county taxes is superior to a lien for special assessments of every kind, that every presumption is against a legislative intent to prefer the lien of special assessments, and that "in the absence of clear statutory provisions to the contrary a general tax lien is not only superior to an assessment lien but a deed executed in the enforcement of the general tax lien will destroy the assessment lien and, conversely, a deed executed in the enforcement of an assessment lien will not extinguish a general tax lien." (P. 736.) Reference is then made to section 3787 and it is held that: "This section has been construed by our own appellate court and by the Supreme Court of at least one other state which has enacted it into their law, from which it is concluded that *the legislative intent is to place all taxes, both for county, municipal and other governmental agency purposes and taxes in the form of assessments in favor of special agencies of the state upon an equal footing before the law.* (Citations.) [Emphasis added.]

"From the above authority and upon our construction of the section we may now safely conclude that under our system of taxation liens in favor of county and municipal corporations and special assessments, under the authority of state agencies for public purposes, are all on an equality. By this is meant that in case of delinquency a deed to any one of these agencies for such taxes will not obliterate the existing liens on the property in favor of any or all of the others." (P. 737.) In dealing with the effect of the clause in the irrigation district law that a deed executed after a sale for delinquent assessments passes title free of all encumbrances, the court states: "It is sufficient for the purposes of this cause to hold that land deeded to a state agency for delinquent taxes or

assessments does not *ipso facto* necessarily destroy existing liens in favor of other state agencies or merge them into the tax deed; and, further, to hold that such liens are extinguished or merged only when necessary to protect property impressed with a public use. This construction of said section harmonizes with other provisions of the Political Code on the same subject and also with cognate provisions in the special acts under which the varied types of public corporations existing in this state operate." (P. 739.) The Improvement Act of 1911 involved in the instant case (compared with the irrigation district law) calls more forcibly for the application of the rule in the La Mesa case, as it is not as broad as the irrigation district law which excluded all encumbrances without exception.

The act here involved (Improvement Act of 1911) excepts *liens* for taxes, and it is urged that when the property is deeded to the state, and by the state to the purchaser, the tax lien is extinguished, and hence the clause in the act excepting only *liens* cannot apply. In the instant case it is true that we have a deed, that is, the lien has been foreclosed, and the Political Code and Improvement Act refer to liens as excepted, but there were also deeds in the La Mesa case, and we believe the holding there disposes of the matter. Moreover, if that contention were to prevail, a reward would be given for delay. If the general taxing agency were prompt in its procedure to obtain a deed or convey the property to a purchaser and thus return it to the tax rolls, it and the purchaser would suffer the penalty of having their interest destroyed by a later special assessment deed. There would be a strong motive to delay in perfecting a title after the lien became effective to avoid the penalty, all to the detriment of the taxing agencies. Also it is a settled principle that in order to preserve the priority of a right (here to preserve parity), a lien is not considered merged by a subsequent transaction. At any rate equity will save the priority. (16 Cal.Jur. 335.)

From the foregoing we conclude that the defendant-holder of title by deed after sale for delinquent special assessments does not have a right superior to that of the plaintiff-holder of a deed from the state based upon a sale for delinquent general taxes, and the reverse is also true.

If we assume that a deed from the state executed prior to the 1939 amendment (Pol. Code, § 3897) would have destroyed the special assessment lien and title acquired pur-

suant thereto (see *Rostain* v. *Guggenheim,* 63 Cal.App.2d 127 [146 P.2d 247] ; *Campbell* v. *Woolner,* 57 Cal.App.2d 511 [134 P.2d 822] ; *Smith* v. *Addiego,* 54 Cal.App.2d 230 [129 P.2d 953] ; *Brewer* v. *Feigenbaum,* 47 Cal.App.2d 171 [117 P.2d 737]), still under the law in effect at the time the deed was issued to the state, and at the time the state executed the deed to the purchaser in the instant case, which was after 1939, the title conveyed by the state did not cut off special assessment liens. The two liens were, under *La Mesa etc. Irr. Dist.* v. *Hornbeck, supra,* on a parity. The parity doctrine has been a part of the law for many years and has been expressly declared the policy of this state by the Revenue and Taxation Code. We do not believe that that policy should be thwarted by the circumstance that because the law in effect at the time the deed was given to the state seemingly extinguished such liens, it should continue to apply when the deed from the state was made after a change in the law. It is not a case where the interest of the property owner in the taxed property is involved. (See *Bray* v. *Jones,* 20 Cal.2d 858 [129 P.2d 364].) We know of no reason why the state may not declare a deed from it, with reference to its effect upon conflicting tax liens, to be different from that under the law as declared by it when it received the deed. That is precisely what it did in adopting section 3836.1 of the Political Code to cover the period from 1939 to 1941, and thereafter by the Revenue and Taxation Code. It is the law in effect when the state issues its deed to the purchaser that governs.

Not only do the tax deeds from the respective taxing agencies stand on a parity with relation to whether one destroys the other when we are not concerned with the time when the liens from which they flowed arose, but, moreover, in order that that parity and equality be made real and fully significant, it must follow that the time such liens arose or the deeds were executed with reference to each other, is immaterial. It has been held, in dealing with successive tax or assessment liens by the same taxing agency, that, in the absence of statute, the last in time is first in right. (See *Raisch* v. *Myers,* 27 Cal.2d 773 [167 P.2d 198] ; *Cullinan* v. *Grey,* 18 Cal.2d 247 [115 P.2d 460] ; *Thompson* v. *Clark,* 6 Cal.2d 285 [57 P.2d 490] ; *Conley* v. *Hawley,* 2 Cal.2d 23 [38 P.2d 408] ; *Balaam* v. *Pacific States S. & L. Co.,* 219 Cal. 612 [28 P.2d 1053] ; *Woodill & Hulse Elec. Co.* v. *Young,* 180 Cal. 667 [182 P. 422, 5 A.L.R. 1296] ; *Cowell* v. *Washburn,* 22 Cal.

519, 520; *Diehl* v. *Hanrahan,* 68 Cal.App.2d 32 [155 P.2d 853].) Be that as it may, it is clear that under the statutes here involved, where we have separate taxing agencies and purposes, and a general tax lien against a special assessment lien, we should apply the parity rule without qualification. There may be some basis for the last mentioned distinction (see *Cullinan* v. *Grey, supra,* at p. 253.) So far as tax deeds are concerned, if the rule that the first shall be last and the last shall be first is followed, the parity principle is seriously impaired, if not destroyed. It would only apply when the liens attached at the identical time, a situation occurring in a small minority of cases. We believe the principle stated in *La Mesa etc. Irr. Dist.* v. *Hornbeck, supra,* and expressly declared by the Legislature since the transactions here involved (Rev. & Tax. Code, § 3900), should control in cases of this character.

■ This brings us to the difficult question of the character and extent of the interest and the nature of the estate in the property of the holders of deeds from the respective taxing agencies. It cannot be held, and preserve the principle of parity in its fullest sense, that the holder of one deed may pay off the amount the other has paid to acquire his title and thus secure to himself a clear title to all the property. The property may have greatly increased in value, thus giving a great advantage to the one permitted to pay off the other. In such event the equality and parity of right would be lost. Since there is no priority as between the several tax and assessment liens and since several purchasers of the same property hold the interests conveyed on a parity with each other, the respective purchasers become tenants in common. Also, since the property was originally subject to more than one lien on an equal basis, that is, without priority, the property should be subject to liens to the extent of the respective purchase prices paid. In that manner each purchaser is given the full benefit of the investment made by him in the purchase of the property. Otherwise absurd results would follow. One purchaser of the property would receive his interest for a few dollars, while another might have paid thousands. To effect equality and parity as between the co-owners there is therefore necessarily an equitable lien against the property in favor of each cotenant to the extent of the amount paid by him. The result of such liens as between the cotenants would be that in the event of the subsequent sale of the entire property, each cotenant would be entitled to reimbursement for the amount

paid by him before equal division of any excess. Should the property bring an amount less than the aggregate purchase sums, the amount of each cotenant's reimbursement would be decreased proportionately. In the event of sale by one cotenant, or in the event of partition, each cotenant's share would be subject to one-half the amount of each lien as continued against the property.

It is not clear whether the judgment rendered by the trial court determines the rights of the parties in accordance with the foregoing pronouncement, and the judgment is therefore modified to provide that the title to the property here involved is held by plaintiff and cross-defendant Monheit and defendant and cross-complainant Bernard as tenants in common, each owning an undivided one-half interest therein, subject to a lien in favor of each tenant against the entire property in the amount which he paid for his interest, and as so modified, the judgment is affirmed. Neither party to recover costs on this appeal.

Gibson, C. J. Shenk, J., Edmonds, J., Traynor, J., Schauer, J., and Spence, J., concurred.

Appellant's petition for a rehearing was denied May 16, 1946, and the opinion was modified to read as above.