[Civ. No. 15577. Second Dist., Div. One. Jan. 10, 1947.]

M. E. OSWALD, Respondent, v. FRED R. SALTER, Jr. et al., Appellants.

John F. Bender and G. Loshoncy for Appellants.

Ernest A. Oswald for Respondent.

DORAN, J.—The action herein was instituted by respondent for the purpose of quieting title to three parcels of real property in the city of Los Angeles, designated in the complaint as portions of Lot 4 in Block 18; and of Lots 1 and 5 in Block 16. The respondent claims title thereto by virtue of certain tax deeds from the Los Angeles County Tax Collector, dated May 4, 1942, as to Lot 4, and June 26, 1942, covering Lots 1 and 5. Appellant Amanda Salter claims to own Lot 4 by reason of a Los Angeles City Treasurer's deed recorded June 16, 1942, issued after foreclosure of a street improvement bond authorized under the Improvement Act of 1911 [Stats. 1911, p. 730; Deering's Gen. Laws, 1937, Act 8199], such bond being dated February 19, 1926. In regard to this lot the city treasurer's certificate of sale was issued to Merchants Finance Corporation and assigned to Amanda Salter. Appellant Fred R. Salter, Jr. claims the ownership of Lot 1 under a quitclaim deed from the Merchants Finance Corporation, which corporation was the grantee in a commissioner's deed recorded July 7, 1937, based upon the foreclosure of a street improvement bond issued against said property pursuant to the Improvement Act of 1911, the bond being dated February 19, 1926. Fred R. Salter, Jr. likewise claims to own Lot 5, Block 16 by virtue of a commissioner's certificate of sale in a similar improvement bond foreclosure, issued on October 24, 1939, to Pacific States Properties, and assigned to

Salter on October 27, 1939; in respect to this lot no commissioner's deed has been issued.

The trial court found that each of the conveyances to the plaintiff "was a good and valid tax deed executed pursuant to law," and that liens created by the commissioner's certificates of sale and the city treasurer's certificate of sale, issued on foreclosure of improvement bonds as hereinbefore mentioned, upon which defendants relied, were "subordinate and inferior to the title of the plaintiff," and were "rendered of no force, validity, or effect by reason of the execution of the tax deed(s) of said real property to the plaintiff." The present appeal is from the resulting judgment quieting respondent's title to each of the three lots in question.

The appellants' brief states the fundamental contentions of the respective parties as follows: "Plaintiff (respondent) contends that the tax deed title to the property is superior to special assessment liens and title derived therefrom, and defendants Salter (appellants) contend that defendants' title, based upon foreclosure of street improvement bond liens, and plaintiff's title, based upon tax deeds issued for non-payment of taxes, are on a parity, neither being superior or subordinate to the others. Defendants Salter contend that the tax deeds to the State and from the State were void for the reason that the publication of the entire delinquent list was split between more than one newspaper . . . and, therefore, did not comply with Section 3766 of the Political Code then in force and effect, and that the noncompliance . . . was not cured by the Curative Act of 1945 (Statutes of 1945, Chapter 1134) for the reason that the defendants' rights intervened between the date of the tax deed to the State and the adoption of said Curative Acts."

In answer to these contentions, respondent insists that "The defendants have failed to prove that they represent any rights which have 'intervened' between the so-called defective publication . . . and the issuance of the tax deed to the plaintiff;" further, that "The Statute of Limitations" has run upon the rights of the defendants to attack the validity of plaintiff's tax deeds." Respondent has cited two provisions said to bar appellants' attack on the tax deeds in question. Section 3521 of the Revenue and Taxation Code reads as follows: ". . . A *proceeding* based on an alleged invalidity or irregularity of any deed to the State for taxes or of any proceeding leading up to the deed can only be commenced within one year

after the date of recording of the deed to the State," etc. (Italics added.) Section 3726 of the Revenue and Taxation Code provides that ". . . A *defense* based on the alleged invalidity of irregularity of any proceeding instituted under this chapter can be maintained only in a proceeding commenced within one year after the date of execution of the tax collector's deed." (Italics added.) However, as pointed out in appellants' brief, neither of the above quoted sections constitutes a bar to appellants' claim. ■ Section 3521 relates to "alleged invalidity of any deed to the State," which is the point involved in the present controversy, but by its language bars only a *"proceeding"* based on such alleged validity; such section does not purport to prohibit a *defense* based upon alleged invalidity. Appellants did not institute any proceeding here, and the point was raised only by way of defense. Section 3726 is likewise inapplicable for the reason that this section, and the chapter in which it is found, relate to attacks upon the validity of tax deeds *from* and not *to* the state. Respondent's brief observes "that defendants confined their attack upon the plaintiff's tax deeds upon the grounds that the deeds *to* the State of California were defective." In reference to appellants' alleged rights, intervening or otherwise, it may be observed, as noted in appellants' brief, that the introduction in evidence of superior court files of actions to foreclose the street improvement bonds under which appellants claim title, commissioner's certificates and deeds, city treasurer's deeds, etc., established prima facie rights in the appellants. The validity, nature, extent and priority of those rights is, of course, under attack by the respondent who prevailed in the trial court.

■ The principal question involved on this appeal, namely whether the respondent's tax deed title is superior to appellants' title derived from the foreclosure of street improvement bonds, or whether the two titles are on a parity, is not a new one in this state. In this connection the express provisions of section 3900 of the Revenue and Taxation Code may first be noticed: "It is hereby declared to be the policy of the State and the intent of the provisions in this code contained, that the final tax deed or deeds of all taxing agencies, including counties, cities and counties, cities, irrigation districts, reclamation districts, and other taxing agencies that annually levy, assess and collect taxes or assessments upon real property within the State, should be and they are hereby declared to

be upon a parity with each other, and that regardless of when the levy . . . is or has been made, and regardless of when the final tax deed or assessment deed is or has been taken by such taxing agency, that the rights of all taxing agencies and all such deeds shall be equal and upon a parity with each other.''

The case of *Monheit* v. *Cigna*, (April 16, 1946) 28 Cal.2d 19, 25 [168 P.2d 965], has been accorded particular attention in the briefs of both parties. The Supreme Court of this state held that a person holding title by deed after foreclosure of street assessment bonds issued under the Improvement Act of 1911 which specifically provides that such a deed conveys absolute title free from all encumbrances except liens for taxes, ''does not have a right superior to that of the plaintiff-holder of a deed from the state based upon a sale for delinquent general taxes, and the reverse is also true.'' Among other previous decisions the Monheit case cites with approval *Neary* v. *Peterson*, 1 Cal.2d 703 [37 P.2d 82], in respect to which case respondent's brief says: ''I frankly admit that this case is contrary to the position of the plaintiff here,'' but contends that the Neary opinion is unsound.

The doctrine of parity announced in these cases has been adhered to in the recent case of *Security Investment Co.* v. *Douglas*, (Oct. 23, 1946) 76 Cal.App.2d 592 [173 P.2d 672], involving a situation not dissimilar to that of the present controversy. There, as here, the title claims of the respective parties were based on tax deeds issued to plaintiff, and on foreclosure of street assessment bonds by a predecessor in defendant's chain of title; and the Curative Act of 1943 was held applicable to validate tax deeds executed pursuant to defective sales, although defendant's property interest vested prior to passage of the statute. The Security case likewise involved alleged ''split'' publications among several newspapers, of the delinquent tax list, and at page 596 the court said: ''That the procedure adopted herein relative to 'split' publications of the delinquent tax list in question was fatally defective does not of itself prevent the exercise of the curative power, for, as said in *Miller* v. *McKenna, supra,* (23 Cal.2d 774 [147 P.2d 531]) p. 781, 'If it was not fatally defective it would stand in no need of the healing power.' '' The *Miller* v. *McKenna* case held that the Legislature may cure all defects in the taxing process not violative of constitutional rights. In the Security case the court held that the defect in question was not jurisdictional, and quoting from *Barrett* v. *Brown*, 26 Cal.

2d 328 [158 P.2d 567], said: ''The fact that other property was not included in the publication does not vitally disparage the fact of notice to the plaintiff; nor has the plaintiff been deprived of any constitutional right.'' It was therefore held, as must be held in the present case, that the ''tax deeds to and from the state and special assessments, or deeds issued thereon, are on a parity,'' and that ''the holders of deeds herein own the property as tenants in common.''

Respondent insists that ''Public policy favors the liens of taxes of the first and second classes (general taxes and the like) but is not concerned with taxes of the third class (such as street improvement bonds).'' In connection with such alleged distinction the respondent seeks an escape from the language used in section 3900 of the Revenue and Taxation Code, *Monheit* v. *Cigna*, 28 Cal.2d 19 [168 P.2d 965], and elsewhere, to the effect that the liens of all ''taxing agencies'' are on a parity, by affirming that ''a street improvement bond or a deed issued thereon is not a taxing agency.'' Since the improvement assessments involved herein were not general obligations but were liens against individual lots, and were payable to private bond holders rather than directly to some ''taxing agency'' such as a state, county or city, it is argued that the parity rule does not apply and that appellants' title was inferior to and cancelled by respondent's general tax deeds. The difficulty with this argument is that while obviously, as respondent says, the ''street improvement bond or deed issued thereon is not a taxing agency'' in itself, nevertheless, it is quite as obvious that special improvement assessments of the nature involved herein, to be of any validity whatsoever, must result from the authorized action of some ''taxing agency.'' As respondent's tax deeds stem from official action resulting from a failure to pay general taxes collected by a county, so the appellants' title derives from a similar delinquency in respect to special assessments lawfully created for the improvement of city streets. So far as the present controversy is concerned, any attempted distinction based upon a limited interpretation of the term ''taxing agency,'' must be held to be without merit, a distinction without a difference. Moreover, the fact that the designated procedure for the collection of general taxes and of street improvement assessments is not the same, is of no fundamental importance in the instant litigation. No case has been cited which would justify the holding contended for; on the

contrary, the recent cases hereinbefore cited, namely, *Monheit* v. *Cigna*, 28 Cal.2d 19 [168 P.2d 965], and *Security Investment Co.* v. *Douglas*, 76 Cal.App.2d 592 [173 P.2d 672], together with the earlier decisions therein, clearly sustain the appellants' contention that the two titles are on a parity.

The judgment is therefore reversed with directions to enter a judgment to provide that title to the property described as portions of Lots 1 and 5, Block 16 is held by plaintiff and the defendant Fred R. Salter, Jr., as tenants in common, each owning an undivided one-half interest therein; and that the title to the property described as a portion of Lot 4, Block 18 is held by plaintiff and the defendant Amanda Salter, as tenants in common, each owning an undivided one-half interest therein; that in the case of each lot the title thereto is held, in the language of *Monheit* v. *Cigna*, and *Security Investment Co.* v. *Douglas*, subject to a lien in favor of each tenant against the entire property in the amount which was paid for his or its (her) interest.

York, P. J., and White, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied March 10, 1947.