[L. A. No. 20051. In Bank. Sept. 23, 1948.]

ELBERT, LTD. (a Corporation), Appellant, v. WHITFIELD P. NOLAN et al., Defendants; J. J. MISSLER et al., Respondents.

Robt. E. Rosskopf, John F. Bender and G. Loshoncy for Appellant.

Arthur V. Kaufman for Respondents.

Marshall Stimson and Arthur C. Fisher, as Amici Curiae on behalf of Respondents.

SPENCE, J.—This action involves the right to effect a partition of three vacant lots in the city of Los Angeles, the facts being undisputed. Plaintiff's claim stems from the ownership of three unpaid street improvement bonds which were issued as liens, respectively, on each of the three lots—one in 1924,

and two in 1928—pursuant to the Improvement Act of 1911 (Stats. 1911, p. 730; Deering's Gen. Laws, 1937, Act 8199), as amended. No foreclosure proceedings were instituted following the maturity dates of said bonds. Meanwhile the county and city taxes on the three lots became delinquent and under the statutes then in force, the lots were "sold to the state" (Pol. Code, § 3771) and five years thereafter in each case— 1937, 1938, and 1939, respectively—were deeded to the state pursuant to the prior sales thereof (Pol. Code, §§ 3771a, 3785). In 1945, defendants Missler purchased two of the lots and defendant Snow purchased the other at respective tax sales, and received deeds accordingly from the state in pursuance of division 1, part 6, chapter 7, of the Revenue and Taxation Code.

In 1946, plaintiff commenced the present action "for partition and declaratory relief." Following a trial, the court denied plaintiff's right to partition, but found that a bona fide controversy did exist and rendered its judgment quieting title in the defendant tax buyers against all parties, subject to the lien of plaintiff's bonds for "all amounts unpaid" thereon. From such judgment, plaintiff prosecutes this appeal.

As authority for its procedure, plaintiff relies on section 752 of the Code of Civil Procedure, as amended in 1943, which provides, so far as here material, that ". . . an action may be brought . . . where real property is subject to a lien on a parity with that on which the owner's title is based, by the owner or by the holder of such lien, for a partition thereof according to the respective rights of the persons interested therein and for a sale of such property . . . if it appears that a partition can not be made without great prejudice to the parties." Upon the premise that the lots here in question "can not be physically partitioned without injury" thereto "and without great prejudice to the parties," plaintiff urges the propriety of a "decree of partition . . . ordering [the] property sold and the proceeds distributed on the basis of the bond liens being on a parity with the tax titles." As a further consideration, plaintiff claims the right to an allowance for the costs of this action, including "reasonable counsel fees" (Code Civ. Proc., § 796) and the expense of "abstracts of title" on the three lots (Code Civ. Proc., § 799). Plaintiff's "right" to the remedy of partition and to the recovery of the mentioned litigation expenses incident to the prosecution of such action is not open to dispute in the light of prevailing judicial decisions and the applicable statutory law, but there

are certain limitations to be recognized as affecting the measure of its relief, as will hereinafter appear.

The proposition is well settled in this state that liens for general taxes and liens for special assessments stand upon an equal footing before the law. (*La Mesa Lemon Grove & Spring Valley Irrigation District* v. *Hornbeck*, 216 Cal. 730, 737 [17 P.2d 143]; *Neary* v. *Peterson*, 1 Cal.2d 703, 705 [37 P.2d 82]; *Monheit* v. *Cigna*, 28 Cal.2d 19, 24 [168 P.2d 965, 167 A.L.R. 995]; *Security Investment Co. of Riverside* v. *Douglas*, 76 Cal.App.2d 592, 597 [173 P.2d 672]; *Oswald* v. *Salter*, 77 Cal.App.2d 599, 603 [176 P.2d 425].) Forceful illustration of this doctrine of parity as to the liens of ''all taxing agencies'' under the ''declared . . . policy of [this] state'' (Rev. & Tax. Code, § 3900) is found in the case of *Monheit* v. *Cigna, supra,* stating that a person holding title by deed after foreclosure of street assessment bonds issued under the Improvement Act of 1911, which specifically provides that such a deed conveys absolute title free from all encumbrances except liens for taxes, ''does not have a right superior to that of the plaintiff-holder of a deed from the state based upon a sale for delinquent general taxes, and the reverse is also true.'' (P. 25.) In line with such decision as to the existing equality of rights between the parties as there presented in the quiet title action, the court pertinently continues its observations, at page 26, as follows: ''Not only do the *tax deeds* from the respective taxing agencies stand on a parity with relation to whether one destroys the other when we are not concerned with the time when the liens from which they flowed arose, but, moreover, in order that that parity and equality be made real and fully significant, it must follow that the time such liens arose or the deeds were executed with reference to each other, is immaterial.'' (Emphasis added.) Then turning to the ''question of the character and extent of the interest and the nature of the estate in the property of the holders of deeds from the respective taxing agencies,'' the court reaches the following conclusion, at pages 27-28: *''Since there is no priority as between the several tax and assessment liens and since several purchasers of the same property hold the interests conveyed on a parity with each other, the respective purchasers become tenants in common.* Also, *since the property was originally subject to more than one lien on an equal basis, that is, without priority,* the property should be subject to liens to the extent of the respective *purchase prices paid.* In that manner *each purchaser* is given

the full benefit of the investment made by him in the *purchase* of the property. Otherwise absurd results would follow. One purchaser of the property would receive his interest for a few dollars, while another might have paid thousands. To effect equality and parity as between the *co-owners* there is therefore necessarily an equitable lien against the property in favor of each cotenant to the extent of the amount paid by him. The result of such liens as between the cotenants would be that in the event of the subsequent sale of the entire property, each cotenant would be entitled to reimbursement for the amount paid by him before equal division of any excess. Should the property bring an amount less than the aggregate purchase sums, the amount of each cotenant's reimbursement would be decreased proportionately. In the event of sale by one cotenant, or *in the event of partition, each cotenant's share would be subject to one-half the amount of each lien as continued against the property.*" (Emphasis added.)

So in considering the pertinency of the Monheit case, defendants properly attach significance to the fact that there the rule of parity was applied in disposition of the rights of the litigants under recognized *coexisting title claims* derived from *deeds* executed by the various taxing agencies in consequence of the respective delinquency sales, while here a variant premise prevails between the parties where an *unforeclosed bond lien* is urged as on a "complete parity" with a *deed* based on a tax sale. In short, the parity principle operates to prevent the extinguishment of existing liens standing "upon an equal footing before the law" (*La Mesa Lemon Grove & Spring Valley Irrigation District* v. *Hornbeck, supra,* 216 Cal. 730, 737), and such equality is carried into the titles conveyed by the taxing agencies. Thus the *deed* received after foreclosure of a street assessment bond is of equal rank with a *deed* pursuant to "a sale for delinquent general taxes" (*Monheit* v. *Cigna, supra,* 28 Cal.2d 19, 25), but an unforeclosed lien manifestly does not represent a like state of finality, though, as the doctrine of parity envisages, it may achieve such status if the holder elects to enforce it through appropriate proceedings under the law. So it is said in *Monheit* v. *Cigna, supra,* at page 25, that "in order to preserve the priority of a right (here to preserve parity) a lien is not considered merged by a subsequent transaction." Such principle coincides with the earlier decisions of this court cited and followed in the Monheit case: *La Mesa Lemon Grove & Spring Valley Irrigation District* v. *Hornbeck, supra,* 216 Cal. 730, holding that tax

and assessment liens of various political subdivisions remain valid and enforceable encumbrances on the land after a tax deed has issued to the subdivisions whose period of redemption first expires; and *Neary* v. *Peterson, supra,* 1 Cal.2d 703, holding that a lien for "street improvement assessments" remains intact notwithstanding the sale of the property for delinquent taxes, and the right of foreclosure on the bond cannot be denied. In brief, these cases involving "separate taxing agencies and purposes, and a general tax lien against a special assessment lien," apply "the parity rule without qualification" (*Monheit* v. *Cigna, supra,* p. 27) to preserve rights stemming from the fact of coexistence of the liens of equal rank. The parity so found to prevail between the liens of the "taxing agencies" continues into the titles conveyed by the deeds based on the delinquent tax or assessment sales, and there is no room for the operation of the doctrine of merger of the existing liens in derogation of such parity because of a deed to any one of these agencies—a "subsequent transaction" not affecting the established equality. (*Monheit* v. *Cigna, supra,* p. 25.) But such declaration of equality in rank as between co-lienholders pending enforcement of their respective interests or as between coowners of property interests as conveyed by respective deeds does not foreclose recognition of the disparity here between the respective positions of plaintiff and defendants, where the controversy involves the status of an *unforeclosed lien* as against the "subsequent transaction" of a *title claim* pursuant to a *tax deed.*

Section 752 of the Code of Civil Procedure, as above quoted, precisely contemplates the situation here presented, where plaintiff as the holder of "a lien on a parity with that on which the owner's title is based" seeks partition of the property so encumbered. As heretofore recited, the state, upon expiration of the five-year period of redemption, acquired by deed "absolute title to the property, free of all encumbrances, except [certain specified] liens" (Pol. Code, § 3787; Rev. & Tax. Code, § 3520; *Mercury Herald Co.* v. *Moore,* 22 Cal.2d 269, 273 [138 P.2d 673, 147 A.L.R. 1111]; *People* v. *Maxfield,* 30 Cal.2d 485, 487 [183 P.2d 897]), and such title passed to defendants as purchasers of the respective lots at the tax sales in 1945 (Rev. & Tax. Code, § 3712; *Monheit* v. *Cigna, supra,* 28 Cal.2d 19, 26). However, such separate proceedings, establishing defendants as "owners" of the property based on titles correlative with the respective tax liens, did

not *ipso facto* destroy plaintiff's rights flowing from its bond liens but, on the contrary, left them "intact" (*Neary* v. *Peterson, supra,* 1 Cal.2d 703, 706) as premise for the statutory partition action in question. In such circumstances, it does not aid defendants to argue, in opposition to plaintiff's claim of relief, that the remedy here sought was not available in enforcement of the bonds at the time they were issued. While it may be said that such remedy would not be available as between the original owners of the property and the bondholder because of the constitutional objection that it would impair the contract between them (*Meriwether Investment Co., Ltd.* v. *Lampton,* 4 Cal.2d 697, 702 [53 P.2d 147] ; see, also, note 100 A.L.R. 164, 174), here the original owners are not involved. Rather these are the significant factors affecting plaintiff's rights in this regard: defendants purchased the property in 1945 at the tax sales; section 752 of the Code of Civil Procedure, as amended in 1943, was then in effect; and the parity of tax and bond liens had long been definitely established by judicial decisions in this state (*La Mesa Lemon Grove & Spring Valley Irrigation District* v. *Hornbeck* (1932), *supra,* 216 Cal. 730; *Neary* v. *Peterson* (1934), *supra,* 1 Cal.2d 703). As is aptly stated in *Monheit* v. *Cigna, supra,* at page 26: "We know of no reason why the state may not declare a deed from it, with reference to its effect upon conflicting tax liens, to be different from that under the law as declared by it when it received the deed. . . . It is the law in effect when the state issues its deed to the purchaser that governs."

Likewise without force is defendants' reliance upon the bar of the statute of limitations applicable to the maintenance of proceedings to foreclose the lien of a bond following "the expiration of four years after the due date of the last installment" thereon. (Sts. & Hy. Code, § 6610; see, also, Code Civ. Proc., § 337.) Plaintiff does not seek foreclosure of its bond liens, but rather a partition of the property pursuant to statutory authority as a "holder of [street improvement] lien[s]"—subsisting claims against the property and "on a parity with [the liens] on which [defendants' respective] title[s] are based" pursuant to the tax deeds. (Code Civ. Proc., § 752, as amended in 1943, *supra.*) The cited statute, in its provision for the remedy of partition, does not contain a period of limitations, and there is no other statute which specifically limits the time for the commencement of any action for partition. If it be claimed that the general four-year limi-

tation is applicable to such actions (Code Civ. Proc., § 343), it is a sufficient answer here to state that since plaintiff's action for partition, instituted in pursuance of the 1943 statutory enactment, was commenced in 1946, the timeliness of its procedure is not open to dispute. ■ Defendants' citation of section 329 of the Code of Civil Procedure, as amended in 1945, for the proposition that since no "action [has] ever been brought to *foreclose* the lien of [plaintiff's] bonds," they "should, therefore, now be declared as 'conclusively presumed paid'" obviously has no relevancy. That section expressly relates to "proceedings . . . prescribed by legislation of [a] political unit *other than the State*," and since plaintiff's bonds were issued under authority of the Improvement Act of 1911, a state law, they are manifestly excepted from the operation of the cited code provision.

■ With plaintiff's statutory right to bring a partition action so established, there remains for consideration the matter of effecting the sale of the three lots in question—designated in this action as Parcels Nos. 1, 2 and 5—since "it appears that a [physical] partition can not be made without great prejudice to the parties." The statute expressly provides "for partition . . . according to the *respective rights* of the persons interested" in the property. Plaintiff's rights stem from unforeclosed liens for delinquent street assessments against each of the parcels, while defendants' respective liens have been carried into claims of title by virtue of deeds from the state on sale of the lots for delinquent taxes— the tax titles of defendants Missler relating to Parcels Nos. 1 and 2, and the tax title of defendant Snow relating to Parcel No. 5. If plaintiff's liens had been carried into title, then there would have been created a tenancy in common as to each of the parties involved. Such was the situation in *Monheit* v. *Cigna, supra,* 28 Cal.2d 19, where it is declared, at pages 27 and 28, that "in the event of the subsequent sale of the entire property, each cotenant would be entitled to reimbursement for the amount paid by him before equal division of any excess." This language has been correctly construed in subsequent decisions of the appellate court to mean that the purchaser of the tax title from the state has an equitable lien to the extent of the amount he *paid* for such tax title; and the holder of the bond title has an equitable lien to the extent of the amount he *paid* upon foreclosure proceedings. (*Cate* v. *Bourzac,* 74 Cal.App. 2d 422, 423 [168 P.2d 971]; *Security Investment Co. of Riv-*

*erside* v. *Douglas, supra,* 76 Cal.App.2d 592, 597; *Oswald* v. *Salter, supra,* 77 Cal.App.2d 599, 605.) But analogous reasoning under the parity principle as there applied cannot prevail in the distribution of the proceeds of the sale of property subject to an *unforeclosed bond lien* and a *tax lien carried into a title claim through deed* from the state. The cited partition statute is remedial in nature only and does not purport to increase the substantive rights of a party invoking its aid, so that here "according to the *respective rights*" of the litigants, plaintiff's enforcement of its existing bond liens is the measure of its maximum interest in the property, and it cannot participate in a proration of the "excess" proceeds under any theory of a "tenancy in common" status as prevailed in *Monheit* v. *Cigna, supra,* with respect to the "holders of *deeds* from the respective taxing agencies." Accordingly, as the matter here arises for disposition, the quantum of plaintiff's liens is the amount which may be found by the trial court to be due on its respective bonds; and the quantum of defendants' liens is the amount which may be found by the trial court to have been paid by them for their respective interests in the designated parcels.

At this point consideration must also be given to plaintiff's claim for "attorney's fees and court costs" incurred in the prosecution of this litigation. Section 796 of the Code of Civil Procedure provides that "costs of partition, including reasonable counsel fees, expended . . . for the common benefit . . . and other disbursements, must be paid by the parties respectively entitled to share in the lands divided, in proportion to their respective interests therein, and may be included and specified in the judgment." Section 799 of the same code allows reimbursement for "an abstract of title of the property to be partitioned," procured by plaintiff and open to "use of all the" litigants. In its complaint plaintiff alleged the necessity of having "abstracts of title to [the] properties" here involved and their availability for "the inspection and use of all parties to this action"; and such abstracts were introduced in evidence. The propriety of such allowances is recognized as consistent with a "just and equitable" division of the "expenditures entailed in the maintenance of [partition] actions for the common benefit among those who shall have been found to be entitled to their respective shares and interests in said property by the ultimate judgment of the court. . ." (*Capuccio* v. *Caire,* 207 Cal. 200, 208 [277 P. 475].) Plaintiff's position, therefore, as to

the premise of reimbursement for these items of expense is unassailable.

Consistent with these observations then, it follows that in effecting the sale of the three lots in question, the trial court should order the separate sale of each lot and the discharge on a parity basis of the liens of the parties on such lot, after payment of costs of sale and the appropriate portion of plaintiff's costs allocable to such sale, and before payment of the balance of the proceeds of the sale to the holder of the legal title to such lot. In the event of the sale of any lot for an amount insufficient to pay such costs and to discharge such liens, the amount available for the discharge of the liens on such lot should be divided on a parity basis in proportion to the amount due on each lien upon such lot.

The judgment is reversed with directions to the trial court to take any additional evidence which may be required to determine the amount of the respective liens and plaintiff's reimbursement claims, and thereafter to modify its findings and to enter its judgment in accordance with the views herein expressed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.