[L. A. No. 21357. In Bank. Dec. 11, 1951.]

EVELYN SCHEAS, Appellant, v. EARL T. ROBERTSON et al., Respondents.

Robert E. Rosskopf, John F. Bender and Gizella M. Allen for Appellant.

Cyril A. Walton for Respondents.

Harold W. Kennedy, County Counsel, John D. Maharg, Deputy County Counsel, Solon S. Kipp and W. E. Starke, as Amici Curiae on behalf of Respondents.

SPENCE, J.— Plaintiff brought this action for partition asserting the lien of an unforeclosed street improvement bond against a certain parcel of realty. The trial court determined from the undisputed facts that plaintiff's action was not com-

menced within the time allowed by applicable legislation enacted in 1945, and that defendants, as bona fide purchasers for value, took title to the property free from the alleged lien. Accordingly, judgment was entered for defendants, and plaintiff appeals.

As grounds for reversal, plaintiff contends that the trial court erred in holding: (1) that the action was not commenced within the time allowed; and (2) that defendants are bona fide purchasers for value within the meaning of the statute, and, as such, entitled to the conclusive presumption that plaintiff's lien was extinguished. Consideration of the applicable statutory law, however, demonstrates the propriety of the assailed judgment.

Plaintiff owns a street improvement bond issued in 1929 as a lien against a vacant lot in the city of Manhattan Beach pursuant to the Improvement Act of 1911. (Stats. 1911, p. 730; Deering's Gen. Laws, 1937, Act 8199; now Sts. & Hy. Code, §§ 5000-6794.) The bond was issued in the amount of $220.84, payable in ten annual installments commencing January 2, 1930, with semiannual interest. The last principal coupon thereon was payable January 2, 1939. The bond was in default in the sum of $132.48 principal, together with interest and penalties from July 2, 1933. It had not been foreclosed either by court action or through the city treasurer's office, and no foreclosure proceedings were pending at the time the present action was instituted on November 16, 1948.

The property which was subject to the lien of the bond became delinquent for city and county taxes for the fiscal year 1929-1930. It was sold to the state in 1930, and was deeded to the state in 1935. On June 21, 1939, the state sold the property to one Bennett, from whom defendants purchased it on January 25, 1947. The court found that defendants were "bona fide purchasers for value," and that "the lien of plaintiff, if any, and any and all right, title and interest claimed by plaintiff" in the property "is barred by the provisions of section 2911 of the Civil Code and section 330 of the Code of Civil Procedure." The court concluded that defendants "are the owners [of the property] in fee simple"; and that "plaintiff has no right, title, interest or lien in, to or upon [the] property."

The judgment for defendants is based upon the trial court's determination: (1) that under the applicable 1945 legislation plaintiff was required to enforce the lien before

four years had elapsed after the due date of the last installment of the bond or by January 1, 1947, whichever was later, and (2) that defendants were bona fide purchasers for value of the property after these periods had elapsed, and, as such, were entitled to the conclusive presumption that plaintiff's lien had been extinguished. In attacking the judgment, plaintiff argues that the bond was a valid and subsisting lien "until paid"; that it stood "on a parity" with the delinquent tax lien; that by deed from the state in 1939, Bennett acquired "tax title" to the property "subject to the parity bond lien"; that all subsequent transferees took "tax title" subject to the same obligation; and that defendants, even though they purchased after January 1, 1947, "were not in fact, and could not in law be, *bona fide* purchasers for value of said property, as against said bond lien." Under the uncontroverted facts, however, plaintiff cannot prevail.

Plaintiff's bond was issued March 18, 1929, as a lien on the property. Section 23 of the Improvement Act of 1911 (now Sts. & Hy. Code, § 5372) provided at that time that "such lien shall so continue until it be discharged of record." (Stats. 1927, ch. 745, § 1, p. 1407; see, also, § 63 of the act; now Sts. & Hy. Code, § 6460.) The tax lien arose in March, 1929, and continued as a lien when the property was conveyed to the state in 1935. ▉ The deed to the state gave it absolute title, free of all encumbrances except certain specified liens, including those for special assessments (Rev. & Tax. Code, § 3520), subject to the right of redemption. (*People* v. *Maxfield*, 30 Cal.2d 485, 487 [183 P.2d 897].) ▉ The state by sale in 1939 passed its title to Bennett, and eliminated the right of redemption. However, such acquisition of the state's title did not *ipso facto* destroy plaintiff's rights flowing from the bond lien, but left them intact. (Rev. & Tax. Code, § 3712.) ▉ From 1939, when Bennett acquired title from the state, until January 1, 1947, the title of Bennett as a tax deed purchaser and the unforeclosed bond lien were on a parity, and the owner of the bond lien had the right to maintain an action for partition. (Code Civ. Proc., § 752, as amended in 1943; *Elbert, Ltd.* v. *Nolan*, 32 Cal.2d 610, 613, 615 [197 P.2d 537]; *Munden* v. *Hayes*, 89 Cal.App.2d 772, 774-776 [202 P.2d 112].)

The enforcement of bond liens through foreclosure has been the subject of considerable legislative regulation over the years. In case of default, the sole remedy given the bond-

holder by the Improvement Act of 1911 as originally enacted, was the right to have the treasurer sell the property in foreclosure of the lien. (Stats. 1911, p. 730, § 67 et seq.) In 1921, a "separate, distinct and cumulative remedy" was given, whereby the bondholder might bring an action to foreclose the bond. (Stats. 1921, p. 297, § 76.) In 1927 said section 76 was amended to provide that the action to foreclose the bond could only be filed after six months and not more than four years from the date of the last delinquency. (Stats. 1927, p. 1411.) Even though the period during which a bondholder could bring an action to foreclose the lien had expired, the lien itself was not terminated but continued to exist as a basis for an action for partition. (*Elbert, Ltd.* v. *Nolan, supra,* 32 Cal.2d 610; also *Raisch* v. *Myers,* 27 Cal.2d 773 [167 P.2d 198]; *Ward* v. *Chandler-Sherman Corp.,* 76 Cal.App.2d 373 [172 P.2d 900]; *Munden* v. *Hayes, supra,* 89 Cal.App.2d 772.)

In 1945 the Legislature enacted extensive changes affecting the duration and enforcement of assessment liens. Prior to that year, section 2911 of the Civil Code read: "A lien is extinguished by the lapse of time within which, under the provisions of the Code of Civil Procedure, an action can be brought upon the principal obligation." (But for inapplicablity of the general section to certain special assessment bonds, see *Raisch* v. *Myers,* 27 Cal.2d 773, 778-779 [167 P.2d 198].) In 1945, the section was amended to read as follows: "A lien is extinguished by the lapse of time within which, under the provisions of the Code of Civil Procedure, either:

"1. An action can be brought upon the principal obligation, or

"2. A treasurer, street superintendent or other public official may sell any real property to satisfy a public improvement assessment or any bond issued to represent such assessment and which assessment is secured by a lien upon said real property, whichever is later.

"Anything to the contrary notwithstanding, any lien heretofore existing or which may hereafter exist upon real property to secure the payment of a public improvement assessment shall be presumed to have been extinguished at the expiration of four years after the due date of such assessment or the last installment thereof, or four years after the date the lien attaches, or on January 1, 1947, whichever is later, or in the event bonds were or shall be issued to represent such assessment, the lien shall then be presumed to have been extinguished at the expiration of four years after

the due date of said bonds or of the last installment thereof or of the last principal coupon attached thereto, or on January 1, 1947, whichever is later. The presumptions mentioned in this paragraph shall be conclusive in favor of a bona fide purchaser for value of said property after such dates.''

Section 330 of the Code of Civil Procedure was added by the Legislature in 1945, and thereby additional limitations were imposed. This section limited the power of a treasurer, street superintendent or other public official to foreclose a public improvement bond to a period of ''four years after the due date of said bond or of the last installment thereof or of the last principal coupon attached thereto, or prior to January 1, 1947, whichever is later,'' and no sale could be made thereafter.

The reasons which prompted the Legislature to enact the 1945 changes as a method of relieving special assessment districts from long-accumulated and pyramiding delinquencies and the chaotic economic conditions arising therefrom, are stated at length in *Rombotis* v. *Fink*, 89 Cal.App.2d 378, 390 [201 P.2d 588]. In that case the court recognized these comprehensive enactments as constituting a ''revision of the entire subject,'' and noted that the Legislature thereby plainly manifested its purpose to and ''did provide a definite statute of limitations and a definite period of time upon the expiration of which *street improvement liens* would be not only unenforceable by foreclosure but also *would be presumed to have been extinguished*''; that the ''enactments'' were ''intended . . . to apply retrospectively, giving the holders of liens which had theretofore attached either four years or until January 1, 1947, whichever was later, in which to take action''; and that the ''legislation took effect September 15, 1945, thus giving the holders of old liens 15½ months in which to act.'' (89 Cal.App.2d at p. 384.) (Italics added.)

It is settled that the Legislature may enact a statute of limitations ''applicable to existing causes of action or shorten a former limitation period if the time allowed to commence the action is reasonable.'' (*Mercury Herald Co.* v. *Moore*, 22 Cal.2d 269, 275 [138 P.2d 673, 147 A.L.R. 1111]; also, *Security-First Nat. Bank* v. *Sartori*, 34 Cal.App.2d 408, 414-415 [93 P.2d 863].) Statutes of limitation are ''within the jurisdictional power of the legislature of a state'' (*Saranac Land & Timber Co.* v. *Comptroller of N. Y.*, 177 U.S. 318, 324 [20 S.Ct. 642, 44 L.Ed. 786]); they are ''vital to the welfare of society and are favored by the law . . . to

126

be viewed as statutes of repose, and as such constitute meritorious defenses.'' (*Fontana Land Co.* v. *Laughlin,* 199 Cal. 625, 636 [250 P. 669, 48 A.L.R. 1308].)

 The 1945 enactments come within the legislative prerogative and are not constitutionally objectionable. The court in *Rombotis* v. *Fink, supra,* 89 Cal.App.2d 378, at pages 386-392, fully discussed the question of the constitutionality of these limitations on the rights of bondholders to enforce their liens created by bonds issued before the 1945 legislation. The courts stated: ''In our opinion, the legislation here in question satisfies the requirements of due process and does not impair the obligation of contracts within the meaning of the constitutional inhibitions. It is to be noted that the Legislature did not *ipso facto* extinguish any substantial right. The remedy of foreclosure in court or through sale by a city or county treasurer or other official was preserved by granting what the Legislature deemed a reasonable time after the effective date of the legislation for the bondholder or lienholder to take action . . . the parties have no vested right in a statute of limitation . . . they contract in the light of the power of the Legislature to modify or change existing remedies or prescribe new modes of procedure, provided a substantial and efficacious remedy remains. . . . So here, adequate time was allowed any bondholder to preserve any right which he might have. Adequate protection was afforded all who had not in fact abandoned their rights, but had merely delayed in perfecting them. The only rights sought to be extinguished were those where the inference could reasonably be drawn from inaction that the rights had been abandoned. The extinguishment resulted, not from the legislation itself, but from the conduct of the bondholder in continuing to fail to assert his right after due notice. The legislation in question does no more than recognize the logical inference to be drawn from long inaction on the part of the bondholder—that the claim has been paid, abandoned or otherwise extinguished. ; . . The solution to this problem, as attempted by the 1945 Legislature, is a reasonable one. As heretofore pointed out, under the authorities cited and many others which could have been cited, the Legislature may require that the holder of a right take action to enforce it within a specified time, and such requirement does no violence to the due process or contract clauses of the state or federal Constitutions, so long as a reasonable time is allowed. . . . [U]nder section 2911 of the Civil Code as amended in 1945,

the lien is 'presumed to have been extinguished,' and so far as the plaintiff in the present cause is concerned, the trial court having found him to be a 'bona fide purchaser for value,' the presumption is 'conclusive.' . . . Whatever may be the situation as between the holder of an outlawed bond and the original owner of the property who seeks to avoid payment, a bona fide purchaser is entitled to a decree quieting his title."

It is apparent, therefore, that the Rombotis case clearly held that section 2911 of the Civil Code was a valid statute of limitations. Plaintiff argues, however, that the present situation is distinguishable from the Rombotis case in that: (1) the Rombotis case involved the right of foreclosure rather than the right of partition as a means of enforcing an outstanding bond lien (*Elbert, Ltd.* v. *Nolan, supra,* 32 Cal.2d 610); and (2) the purchaser of the property seeking to quiet title against the lien of a bond some 14 years in default indisputably held the "fee" rather than "tax" title to the realty, and his status as a "bona fide purchaser for value" in August, 1947, was not attacked.

█ The rule of *Elbert, Ltd.* v. *Nolan*—that the bond lien continued to exist so as to support an action for partition although it could not be enforced through foreclosure proceedings by reason of the running of the statute of limitations—is inapplicable here. In that case the partition action was commenced in 1946 and was decided under the statutes in force prior to January 1, 1947, the date fixed in the 1945 legislation. Since the 1945 legislation embraced a "complete revisory plan with reference to the duration and extinction of assessment liens," and provided "a definite statute of limitations and a definite period of time upon the expiration of which street improvement liens would be *not only* unenforceable by foreclosure *but also* would be presumed to have been extinguished" (*Rombotis* v. *Fink,* 89 Cal.App.2d 378, 384 [201 P.2d 588]; emphasis added), the rule of *Elbert, Ltd.* v. *Nolan* is not controlling in cases involving facts arising subsequently to the limitation date of January 1, 1947. Accordingly, where the 1945 legislation applies, it will operate to prevent the bondholder from enforcing his lien in any manner, whether the remedy pursued be an action for partition or foreclosure. To hold otherwise, and thus permit the bondholder's lien to be enforced through one remedy but not the other, would manifestly frustrate the

purpose of the 1945 legislation which was designed to preclude in any manner the enforcement of stale claims outstanding against property after the expiration of a reasonable time.

The second alleged ground for distinguishing the Rombotis case is likewise without merit. Plaintiff claims that the evidence does not support a finding that defendants are "bona fide purchasers for value." It appears that defendant Robertson paid the following sums on purchase of the property: $125 for the tax deed; $203.77 for a certificate issued on a foreclosed bond; and $211.30 for miscellaneous fees, making a total of $540.07 paid for a marketable title. He testified that at the time of his purchase, January 25, 1947, it was his "opinion [that] the lot was worth . . . possibly $750." He further testified that he knew at that time that he was buying a "tax title"; that he had "access to a title report on the property"; that he had taken into consideration the fact that "there were existing bonds against the . . . property" and had consulted a lawyer before purchasing; that he had "anticipated paying off the certificate" on the foreclosed bond, but that he "had advice to the effect that it would not be necessary to pay [the unforeclosed] bond off, therefore that was [the] reason for paying that much for the deed, and buying it."

█ Within the meaning of the 1945 amendment to section 2911 of the Civil Code, a "bona fide purchaser is one who takes in good faith and for value and in reliance upon the presumptions afforded by [that] section." (*Rombotis* v. *Fink, supra,* 89 Cal.App.2d 378, 392.) █ "A purchaser for value is presumed, *prima facie,* to be an innocent purchaser in good faith." (*Fly* v. *Cline,* 49 Cal.App. 414, 423 [193 P. 615].) It is evident from the record that defendants were purchasers for value. Plaintiff argues that the title report disclosed that plaintiff's bond had been issued and was unpaid of record. █ But the fact that defendants had actual or constructive notice of the recorded status of plaintiff's bond does not establish that they were not bona fide purchasers within the meaning of the 1945 amendment to section 2911. To so construe that section would make the concluding sentence thereof inoperative—"The presumptions mentioned in this paragraph shall be conclusive in favor of a bona fide purchaser for value of said property after such dates"—and completely frustrate the purpose of the Legislature in enacting the 1945 legislation to remedy

a widespread, serious economic condition in land titles throughout the state. (See *Rombotis* v. *Fink, supra,* 89 Cal. App.2d 378, 390.)

All street assessment liens for which bonds were issued under the Improvement Act of 1911 were recorded, and the act provided that the lien continued until it and any bonds issued to represent the assessment were discharged of record. (Sts. & Hy. Code, § 5372.) All persons were deemed to have notice of the record. (Sts. & Hy. Code, § 5373.) Therefore, in every case in which the 1945 amendment to section 2911 would apply, the record would show that the assessment lien had not been discharged of record. It therefore seems clear that the Legislature must have intended that the phrase ''bona fide purchaser for value,'' as used in the 1945 amendment to section 2911, should have a different meaning from that usually attributed to it by the law governing conveyances of real property.

Ordinarily one may not be classified as a ''bona fide purchaser for value'' if he has constructive notice of an outstanding interest and constructive notice is imparted to the public at large by the record of muniments of title. Upon this premise, then, no one could have such status if the record is sufficient to impart notice to him of the existence of an unextinguished assessment lien. It cannot be assumed that the Legislature indulged in an idle act by creating the conclusive presumption under the 1945 amendment to section 2911. It should also be noted that the presumption of extinguishment of an assessment lien is accorded by the statute ''anything to the contrary notwithstanding,'' thus resolving any conflict with the recording provisions of sections 5372 and 5373 of the Streets and Highways Code. Accordingly, and in line with the manifest purpose of the 1945 legislation to supply ''certainty, finality and security of title'' (*Rombotis* v. *Fink, supra,* 89 Cal.App.2d 378, 389), it is reasonable to conclude that mere notice of the record, actual or constructive, cannot be considered as showing a want of good faith in the purchaser of property.

Plaintiff does not claim that defendants had actual knowledge that the obligation evidenced by plaintiff's bond and the lien securing such bond had not been extinguished. Such obligation and lien could have been extinguished by payment or merger. (10 Cal.Jur., § 10, p. 606.) The need for the remedial legislation in question has been dis-

cussed above, and it would appear that one of the problems toward which the 1945 amendment of section 2911 was directed was the inability of a prospective purchaser of property to ascertain the present existence of the bond and the identity of its holder, and the abandonment or extinguishment in fact of the bond. ▮ It follows, therefore, that although one may have notice that the improvement bond is undischarged of record, he is nevertheless within the meaning of the phrase "bona fide purchaser," as contemplated by the 1945 amendment to section 2911, where he has no actual, as distinguished from constructive, knowledge that the assessment lien is not in fact extinguished. Here the evidence, together with the presumption created by the 1945 amendment, sustain the finding that defendants were "bona fide purchasers for value." Plaintiff's bond lien is conclusively presumed to have been extinguished, and the parity principle has no application.

▮ Plaintiff argues that since defendants knew that plaintiff's bond was unpaid of record, and that a predecessor in interest acquired title through a tax deed, they were under the duty to ascertain whether the lien securing the bond was in fact abandoned or otherwise extinguished. There is no force to this argument in view of the declaration of the 1945 amendment that "anything to the contrary notwithstanding" the lien of the bond is "presumed to have been extinguished." Defendants, as bona fide purchasers for value of the tax title, were entitled to rely on that presumption. (*Rombotis* v. *Fink, supra,* 89 Cal.App.2d 378, 392.)

The judgment is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.