[L. A. No. 21519. In Bank. Dec. 11, 1951.]

C. F. ANGER, Appellant, v. HARRY I. BORDEN et al,. Defendants; CITY OF PASADENA, Respondent.

Jacob Forst for Appellant.

H. Burton Noble, City Attorney, Frank L. Kostlan, Assistant City Attorney and Robert E. Michalski, Deputy City Attorney, for Respondent.

SPENCE, J.—In this action for partition and to quiet title brought against several defendants, plaintiff appeals from that portion of the decree granting such relief as to two parcels of property wherein the respective rights of plaintiff and defendant city of Pasadena are involved. The appeal is presented on an agreed statement, wherefrom it appears that plaintiff objects to the trial court's (1) rejection of the lien of plaintiff's improvement bond as an enforceable claim; (2) fixing of the quantum of defendant city's lien against the property; and (3) disallowance of attorney fees insofar as the quiet title aspect of this action is concerned. Plaintiff's objections cannot be sustained in the light of settled legal principles and applicable statutory law.

In 1925 Parcel 1 was deeded to the city of Pasadena by its city treasurer for the nonpayment of city property taxes and special assessments totaling $24.52. The amount claimed by the city to be necessary to redeem this property on the date of trial was $247.91. The property also was sold for $55

at a tax sale by the state in 1945, after having been deeded
to the state in 1937 for delinquent county taxes. The pur-
chaser at the latter sale thereafter conveyed his interest to
plaintiff. Plaintiff also holds a street improvement bond
against this property issued in 1927 under the Improvement
Act of 1911. (Stats. 1911, p. 730; now Sts. & Hy. Code,
div. 7.) This bond matured in 1937 and has not been fore-
closed by court action or sale through the city treasurer's
office. On motion of the city, the court struck the improve-
ment bond from the record on the ground that the lien evi-
denced by the bond was presumed to have been extinguished
under the provisions of section 2911 of the Civil Code as
amended in 1945.

In 1934 Parcel 2 was likewise deeded to the city by its treas-
urer for the nonpayment of city property taxes and special
assessments totaling $52.29. The amount claimed by the
city to redeem this property on the date of trial was $1,415.96.
Plaintiff purchased this property at a state tax sale in 1948
for $2,060, it having been deeded to the state in 1934 for de-
linquent county taxes.

The court adjudged that the title of plaintiff and the city,
as tenants in common, be quieted against all claims and de-
mands of certain defendants. The court further decreed:
(1) that the enforcement of the lien of plaintiff's improve-
ment bond as to Parcel 1 was barred "by reason of time";
(2) that plaintiff was "entitled to a lien on [the] property"
limited to the amount paid for the respective deeds from the
state, and that the city was "entitled to a lien" for the
"sum of its [respective] tax deed and assessments, *plus gen-
eral taxes accruing subsequent to the time it obtained its tax
deed*"; and (3) that no attorney fees should be allowed in-
sofar as the quiet title aspect of the action was concerned.
(Italics added.) Plaintiff contests the propriety of these last
three adjudicated points, and they will be discussed in that
order.

The first question—the validity of section 2911 of the
Civil Code, as amended in 1945, which raises the presumption
of the extinguishment of assessment liens not enforced with-
in the established period of limitations—was fully considered
in the cases of *Scheas* v. *Robertson*, L. A. No. 21357, *ante*,
p. 119 [238 P.2d 982], and *Sipe* v. *Correa*, L. A. No. 21421,
*ante*, p. 131 [238 P.2d 989], this day decided, to which
reference is hereby made. ■ Although the present case
involves one factual difference from the cited cases—here the

city's tax deed on Parcel 1 antedates the issuance of the improvement bond, while in the cited cases the purchasers of the respective tax deeds acquired title after issuance of the improvement bond and their status as bona fide purchasers for value was at issue—such disparity only has the effect of creating in favor of the city a disputable, rather than a conclusive presumption as would prevail with a bona fide purchaser, that the bond lien had been extinguished. (Civ. Code, § 2911, as amended Stats. 1945, ch. 361, § 1.) Since the record presents nothing to refute this disputable presumption, the trial court did not err in concluding that section 2911 constituted an effective bar to the enforcement of plaintiff's bond liens. (See, also, *Rombotis* v. *Fink*, 89 Cal.App.2d 378 [201 P.2d 588].)

▉ The second disputed point is whether in effecting the partition of each of the two parcels involved, the city, as holder of its own tax deed, is thereby entitled to a lien computed upon a different and greater basis than the lien available to plaintiff under the state tax deed. The decree gave the city a lien against the property for the full amount of the city's delinquent taxes and penalties for all the years following the first delinquency, although Parcel 1 had been sold to the city in 1925 and Parcel 2 in 1934. Plaintiff's liens, on the other hand, were limited to the amounts paid for the respective tax deeds from the state. The court found that plaintiff had paid all county taxes due against the property at the time this action was commenced (Rev. & Tax. Code, § 3950), and had "made no claim for said sum." The finding as to the amount of the city's lien was based on the testimony of the city assessor, tax and license collector as "the amount necessary to redeem said property on the date of trial."

The parties do not dispute that the respective tax liens of plaintiff and the city are on a parity. (Rev. & Tax. Code, § 3900; *Monheit* v. *Cigna*, 28 Cal.2d 19 [168 P.2d 965, 167 A.L.R. 995].) It has been generally held that where liens carried into deeds have passed into private hands, each tax purchaser is entitled upon sale to receive the price paid for his interest plus half of the excess proceeds consistent with ownership of an undivided one-half interest in the property as a tenant in common. (*Monheit* v. *Cigna, supra*; *Cate* v. *Bourzac*, 74 Cal.App.2d 422 [168 P.2d 971]; *Security Inv. Co.* v. *Douglas*, 76 Cal.App.2d 592 [173 P.2d 672]; *Oswald* v. *Salter*, 77 Cal.App.2d 599 [176 P.2d 425].) This situation

must be distinguished from that in *Elbert, Ltd.* v. *Nolan,* 32 Cal.2d 610 [197 P.2d 537], where the action for partition involved the opposing claims of the holder of an unforeclosed improvement bond and the state tax deed purchaser. There this court held that under the parity principle, upon distribution of the excess proceeds from the sale of the property, the maximum interest of the holder of the unforeclosed bond lien would be the amount due on his bond without right to share in any excess proceeds, while the holders of the tax deeds would be entitled to the amount paid for their respective deeds, plus the balance of the excess proceeds. (Pp. 618-619.)

Relying. on these principles, plaintiff claims that the court erred here in fixing the quantum of the respective liens to be satisfied before the parties are entitled to any pro-rata share in the excess proceeds—with plaintiff's liens limited by the court to the amounts paid for the respective tax deeds from the state, and the city's liens held by the court to include not only the delinquent amounts for which the parcels were deeded to the city but also the full amount of taxes and penalties to which the parcels would have been subject had the conveyances to the city not been made. In other words, plaintiff argues that the city was given "the privilege of being a property owner and collecting taxes also." In contending that the city should be limited as a deed holder to a lien for its delinquent taxes and assessments up to the date of its deed, plus one half of the excess proceeds, if any, upon sale of the property, plaintiff would treat the city in the same manner as a private purchaser from a taxing agency. However, it is this precise difference in the status of the parties that is determinative here. In this regard the city correctly relies on its tax ordinances in reference to property redemption rights and conditions to sustain the court's holding that the quantum of the city's lien is the amount necessary to redeem each of the parcels at the date of partition.

Section 15 of article 12 of the Pasadena city charter provides that the city shall have such rights, claims and liens for the amount of municipal taxes as has the state for state and county taxes levied in the county; and that the manner of collecting such municipal taxes and enforcing the tax lien, and the proceedings thereafter, shall be prescribed by ordinance and shall conform as nearly as practicable to the general laws governing county taxes. Section 16 provides that all sales for delinquent taxes shall be made to the city unless otherwise regulated by ordinance.

When Parcel 1 was sold to the city, Ordinance No. 490, then in effect, provided that upon the date fixed for the sale of delinquent property by the city tax collector, all such property by operation of law and the declaration of the city tax collector should be sold to the city. Section 44 of the ordinance provided that a redemption might be made by the owner or any person in interest within five years from the date of sale to the city, "or at any time prior to the entry upon or sale of said land by the city." Section 45 provided that if the property was not redeemed within the time allowed, the tax collector must convey the property to the city. Section 54 provided: "In case property assessed for taxes is purchased by the city pursuant to the provisions of this ordinance, *it shall be assessed each subsequent year for taxes until a deed is made to the city therefor in the same manner as if it had not been purchased.*" (Italics added.) Section 55 provided that no sale should be had in case of assessment under section 54 if the land was not redeemed from the previous sale. Section 56 provided: "In case property is sold to the city pursuant to the provisions of this ordinance, and is subsequently assessed pursuant to Section 54 of this ordinance, no person shall be permitted to redeem from such sale except upon payment also of the amount of such subsequent assessment costs, fees, penalties and interest."

Ordinance No. 3108, adopted in 1933, superseded Ordinance No. 490 except as to proceedings theretofore had. This later ordinance provided that property on which taxes were delinquent should be sold "by operation of law and the declaration of the . . . tax collector" to the city. Section 47 provided that "where property has been sold or may hereafter be sold" to the city for delinquent taxes, redemption may be had at any time after the sale and *before the city shall have disposed of or made entry upon the property,* by paying to the city controller: (1) the amount of taxes, penalties for delinquencies and costs due on the property at the date of sale; (2) all taxes that were a lien upon the property at the time they became delinquent; and (3) all unpaid city taxes assessed against or which are a lien against the property for each year since the sale and all penalties and costs, and if not so assessed, then such taxes as may be fixed by the city tax collector at the time of redemption for each of the years not so assessed.

Under section 53 of Ordinance No. 3108, if the property is not redeemed within five years after sale to the city for non-

payment of taxes, the city tax collector must deed the property to the city. Under section 57, when the city has by deed become the owner of the property sold for taxes pursuant to section 53, the legislative body *may* direct the sale of the property or any part thereof, and the right of redemption terminates at the time fixed for sale, whether a sale is effected or not, unless the sale is legally postponed pursuant to section 57 (a). If the sale is not legally postponed, the right of redemption is terminated, and the city may thereafter deal with the property as its own.

It is apparent, therefore, that the right of redemption does not terminate upon execution of a deed to the city, but continues until the city has disposed of the property by sale, or has entered for a public purpose, or has given notice as provided in subdivisions (g) to (k) of section 57 of Ordinance No. 3108. Section 57 further provided that when the city has become the owner of property sold for taxes and a deed has been filed and recorded, the legislative body may direct the tax collector to sell the property at public auction. But, no bid shall be accepted for less than the amount of all the taxes levied upon the property and all costs and penalties for every year delinquent, all tax liens up to the date of execution of the deed to the city, all expenses to date of sale, and also the redemption penalties required under section 47 of the ordinance. The legislative body, however, may declare by resolution that the property is not of sufficient value to be sold for the amount of all taxes and other specified charges, and that it would be in the best interest of the city to sell the property for a lesser sum.

Thus it appears that if the city had sold the property, it could not, in the absence of a special resolution, have sold it for an amount less than the lien here asserted. Under the parity principle of *Monheit* v. *Cigna, supra,* 28 Cal. 2d 19, that purchasers from taxing agencies are entitled to a lien against the property for the amount paid for their deeds, the purchaser would have been able to assert a lien in the same amount as here asserted by the city.

Since the right to redeem the property had not been terminated, plaintiff's rights should be no greater than a redemptioner's under the city's tax ordinances. It appears to be the policy of the city, pursuant to its tax ordinances, to retain possession of property deeded to it for delinquent city taxes, with the view that the owner will eventually redeem it upon payment of the prescribed amounts, rather

than to terminate such right of redemption upon execution of the tax deed to itself. Consistent with this policy, there would seem to be no reason why the state tax sale for delinquent county taxes should provide a means to extinguish the city's claim for all but a small portion of its city taxes accumulated over the years. It may be conceded that taxation for municipal purposes is not purely a "municipal affair" when questions of overlapping tax liens arise. (*Brewer* v. *Feigenbaum*, 47 Cal.App.2d 171, 174-175 [117 P.2d 737], and cases cited.) However, neither the decisions nor independent research have revealed any authority for the proposition that the mode of taxation provided in the city ordinances pursuant to its charter is in conflict with superseding general law. (Rev. & Tax. Code, div. 1, pt. 6, chs. 8-9.)

The case of *Imperial Irr. Dist.* v. *Varney*, 87 Cal.App.2d 264 [196 P.2d 820], cited by plaintiff, has no particular significance. There an irrigation district, holding deeds issued to it for the nonpayment of assessments it had levied, sought to enjoin the defendant county treasurer from foreclosing certain improvement bonds upon the property and to quiet its title against the bond liens. It was held that the foreclosure should proceed and upon receiving his deeds, the bondholder was entitled to hold the property as a tenant in common with the irrigation district "under an ownership now known as the parity rule." (P. 265; see *Monheit* v. *Cigna*, *supra*, 28 Cal.2d 19.) Passing reference was made to the fact that whether or not nonoperative property acquired by such taxing agency for purposes of revenue under a mere tax title may be subsequently assessed for general taxes, was in no way controlling on the question there involved. Here the point is likewise immaterial as the liability of such property to subsequent taxation after deed to the taxing agency for its delinquent taxes has no bearing on the problem of the correlation of the city's lien with the redemption provisions of its ordinances.

The city's claim is supported by the case of *Sutter-Yuba Inv. Co.* v. *Waste*, 21 Cal.2d 781 [136 P.2d 11]. There the purchaser of a deed from a reclamation district contended that in redeeming from county tax delinquency, no taxes should be included for the period during which the district held the property after deed to it for delinquent district assessments, upon the premise that the property owned by

the district was exempt from taxation under section 1, article XIII of the California Constitution. The contention was rejected because it ignored "the distinction between the right of a taxing agency to exemption from taxation on its property and the right of a former owner or his successor in interest to redeem that property from the lien of another taxing agency. The exemption of the taxing unit does not enable the redemptioner to obtain title to the property free from the conditions and for less than the price that the State sets." (P. 785.) In sustaining the validity of the statutes requiring an estimate of redemption to include an amount equivalent to taxes for the unassessed years while the property was held by the district, the court stated at pages 784-785: "The immunity of such property from taxation does not preclude, any more than the immunity of property deeded to the state, the imposition of such conditions to redemptions as the state deems advisable. . . . In the interest of returning tax delinquent property to the tax rolls, the State has enacted liberal provisions for the redemption of such property, so designed as to discourage tax avoidance. If they did not require that redemption take into account the taxes that would be imposed had the property not been deeded to the state, owners would find it advantageous to allow their property to be deeded to the state with the intention of delaying redemption as long as possible to escape the taxes that attend ownership, secure in the knowledge that the state must give them notice before disposing of the property. . . . The right of redemption until the disposal of the property by the state serves the taxpayer's convenience but does not enable him to escape taxes for the period intervening between the deed to the state and redemption while others pay their taxes conscientiously year by year. Likewise he cannot escape such taxes by allowing his property to be deeded to any other taxing unit such as a reclamation district and subsequently regaining the title free of intervening taxes."

Similar reasoning answers plaintiff's contention that it is inequitable to allow the city to have the property deeded to it for delinquent taxes, then await a sale for delinquency of county taxes, and thereafter be reimbursed in an amount representing the taxes which would have been due the city for intervening years if the property had been on the tax rolls. Such procedure involves no inequity, for otherwise the property owner could permit his city taxes to become delinquent,

then permit the county taxes to become delinquent, await an eventual sale of tax-deeded property and purchase from the state, thus extinguishing the city's claim for its unpaid taxes. The inequity of such a situation is recognized by section 3695 of the Revenue and Taxation Code, which provides for the preservation of the liens of all taxing agencies which object to sale by the state. There is no showing in the record here that the city did not so object, as it had a right to do. Under the circumstances, the determination that the amount of the city's lien should be the amount necessary to redeem the property on the date of partition appears to be a logical consequence of the parity rule as reasonably applied to the particular facts of this case.

Likewise without merit is plaintiff's final argument with respect to the allowance of attorney fees for quieting title to the property here involved. ■ It is well settled that a party is not entitled to attorney fees except where authorized by statute or by contract. (*Los Angeles Trust & Sav. Bank* v. *Ward,* 197 Cal. 103, 107 [239 P. 847].) Section 796 of the Code of Civil Procedure authorizes the allowance of the "costs of partition, including reasonable counsel fees, . . . for the common benefit" to be included in the judgment. (*Elbert, Ltd.* v. *Nolan, supra,* 32 Cal.2d 610, 618.) Plaintiff contends that this provision would include attorney fees as an expense of the quiet title aspect of this litigation, since prosecution of a partition action requires the determination of the rights of all persons allegedly having an interest in the property and the conduct of the sale. (Code Civ. Proc., §§ 753, 759, 775.) Section 798 of the Code of Civil Procedure, however, expressly nullifies the force of plaintiff's contention by providing that if "other actions or proceedings have been necessarily prosecuted or defended . . . for the protection, confirmation, or perfecting of the title . . . the court shall allow to the parties to the action . . . all the expenses necessarily incurred therein, *except counsel fees,* which shall have accrued to the common benefit." (Italics added.)

■ Plaintiff contends that the latter section contemplates only separate actions rather than a quiet title proceeding in conjunction with a partition suit. However, he cites no case supporting his argument, and independent research has not revealed any. In view of the explicit statutory language with its distinct exception of "counsel fees," it would appear that such item is not an expense chargeable as plaintiff contends,

and that the court properly declined to allow attorney fees so far as the quiet title aspect of this action is concerned. (See *Deacon v. Deacon,* 101 Cal.App. 195, 202 [281 P. 533].)

The judgment is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.