[Civ. No. 22179. First Dist., Div. Three. July 16, 1965.]

JOHNSON C. MONTGOMERY, Plaintiff and Respondent, v. COUNTY OF CONTRA COSTA et al., Defendants and Appellants.

John A. Nejedly, District Attorney, Charles L. Hemmings and George W. McClune, Deputy District Attorneys, for Defendants and Appellants.

Thomas C. Lynch, Attorney General, Dan C. Kaufmann, Assistant Attorney General and Edward P. Hollingshead, Deputy Attorney General, as Amici Curiae on behalf of Defendants and Appellants.

Johnson C. Montgomery, in pro. per., for Plaintiff and Respondent.

DEVINE, J.—Plaintiff, respondent, cast his claim of rights against the County of Contra Costa into the forms of suit for declaratory relief and for the impressing of a constructive trust and petition for writ of mandate. The facts are agreed upon. The problem is one of law only, and it is

this: When a taxing authority has collected, by tax sale of real property, a surplus above the amount of its lien, may the holder of an unforeclosed 1911 Improvement Act bond recover a pro rata share in the proceeds or, alternatively, the surplus above the tax lien to be applied to the account of his bond on the same property?

## Facts

The facts are these: The County of Contra Costa collects taxes for the City of El Cerrito. The board of supervisors of the county duly resolved to sell the lot in El Cerrito and directed the treasurer-tax collector to sell at public auction at a minimum of $95. The treasurer-tax collector informed the city clerk of El Cerrito, and the city did not object. The property was sold to Thomas C. Callan for $870. The amount required to have redeemed, at the time of sale, was $152.18, including all taxes, penalties, and interest. Costs of sale were $12.79.

There was a lien upon the property of a sanitary district bond on which, at the time of the tax sale, there was due $4.20, and another lien of a 1915 Act bond in amount $590.67, upon which nothing was due and payable at the time of the sale. Plaintiff held, at trial, a bond of a special assessment district of the City of El Cerrito, which had been issued under the Improvement Act of 1911 (Sts. & Hy. Code, div. 7, pt. 5), on which there was owing and unpaid, at the time of the filing of the action, $1,782.64 in principal, interest, and penalties. The assessed valuation of the property was $250, and the assessment ratio in the county was approximately 27 percent.

If the county and its officers be not directed by this action to dispose of the $870 in another manner, the county will credit the amount of $150.96 to taxes receivable for prior years, and the amount of $21.37 to taxes for the year 1962-1963; and will distribute the remaining proceeds of the sale to the tax losses reserve fund which the county has established under Revenue and Taxation Code section 4711.

## Respondent Bondholder's Theories for Recovery

Respondent's theories of recovery are (1) that he is entitled to a pro rata distribution from the proceeds of the sale by authority of statute, namely section 3695 of the Revenue and Taxation Code;[1] (2) that apart from statute, the county

[1]The amount recoverable under this theory would be slightly larger than that awarded by the judgment under trustee theories.

is a constructive trustee for the benefit of respondent under the "parity principle" described below; and (3) the county is a constructive trustee for respondent to prevent unjust enrichment.

## Findings of Fact, Conclusions of Law and Judgment

In a memorandum of decision the court stated that to permit the defendant county to retain the excess received at the tax sale would impair the security of plaintiff's lien and unjustly enrich the county. In the findings of fact, however, which of course take precedence over the memorandum, the court went farther: The judge repeated the statement from the memorandum, but also found that "Immediately following the said sale, the purchaser at the sale had a valid lien against the property for the amount bid at the tax sale, to wit, $870.00; and further had a right to at least an undivided one half interest in the property by reason of the parity principle applicable in the State of California." This second finding is in accord with the application of the principle of parity, as explained below. Respondent, therefore, has prevailed on his second and third theories of recovery. The court said nothing about respondent's claim of statutory right to share in the proceeds of the sale. The subject of statutory right is, nevertheless, considered under the heading next following in this opinion, both because of the wide application which would have to be given to the statute if respondent's claim be justified, as attested by the state controller's brief as amicus curiae, and because respondent would be entitled to have the judgment affirmed on the statutory claim if it be a valid one, even though it was not mentioned in the conclusions of law. The judgment requires the county to pay plaintiff-respondent the sum of $705.03, which is the difference between the proceeds of the tax sale, $870, and $164.97, which is the sum of the amount required to redeem ($152.18) and costs of sale ($12.79).

## Respondent's Claim of Statutory Right
## to Pro Rata Distribution

Section 3695 of the Revenue and Taxation Code, which is one of the sections relating to sale to private parties after deed to the state, provides, so far as relevant to this case, as follows: "If the governing body of any taxing agency does not, before the date of sale, file with the tax collector and the board of supervisors certified copies of a resolution adopted

by the governing body objecting to the sale, the taxing agency has consented to the sale. If the taxing agency consents to the sale the lien of its taxes or assessments and any rights which it may have to the property as a result of such taxes or assessments are canceled by a sale under this chapter and it is entitled to its proper share of the proceeds deposited in the delinquent tax sale trust fund. If the taxing agency does object to the sale, the lien of its taxes or assessments or any rights which the taxing agency may have to the property are not affected by a sale under this chapter.''

Respondent contends that the assessment district by which his bond was issued is a ''taxing agency'' (Rev. & Tax. Code, § 121), that it is entitled to its ''proper share'' of the proceeds of the tax sale, and that he as lien holder is the beneficiary of this share. ██ Appellants reply that the sharing of proceeds of the sale is to be had only where the lien of the taxing agency's taxes or assessments or its rights to the property are canceled by the sale; and that by the express provisions of section 3712 of the Revenue and Taxation Code the lien of the 1911 Improvement Act bond is preserved throughout the sale and the transfer of title to the purchaser. We agree with appellants on the following grounds: (1) The single sentence (the second sentence of § 3695) which provides for sharing contains the provision for cancelation of the lien. A fair reading of this sentence, and of the whole section, discloses the legislative intent that the two elements, sharing of the proceeds and canceling of the lien, must go together. We cannot accept respondent's claim that there are two independent consequences of the consent or failure to object by the taxing agency, and that the sharing of proceeds may be had even though the lien is not canceled, but is expressly preserved by statute. (2) Our interpretation is fortified by section 3695.3, which was enacted in 1941, two years after the enactment of section 3695, and which reads as follows: ''As used in Section 3695, 'assessments' does not include assessments which were, at the time of the sale to the State or to the taxing agency, not included in the amount required to redeem from the sale to the State or to the taxing agency.'' The assessments for 1911 Improvement Act bonds are not included in the amount required to redeem. (Rev. & Tax. Code, § 4102.) Thus, in addition to the provisions relating to retention by section 3712 of Revenue and Taxation Code of the bond lien, the Legislature made certain, by the enactment of section 3695.3, that the lien would not be can-

celed. Respondent argues that "Since the 1941 legislation was unquestionably intended to help bondholders, it cannot be construed in a way which might injure bondholders, unless such construction is required by the express language of the statute." This argument does not strike us as being logical, even if we accept, for the purpose of the argument, the premise that the section was intended for the bondholder's benefit. Since it would appear from the face of section 3695 that cancelation of liens and sharing of proceeds are reciprocal, it would seem that if the Legislature, when it enacted section 3695.3, intended a sharing of proceeds by anyone other than taxing agencies, which forfeited their liens to share the proceeds, the Legislature would have said so. Thus, although section *3695.3 is not, strictly speaking, construed against respondent, in the sense that its terms directly negate his claim,* nevertheless it does operate against him in that this statute, which respondent says was designed to help bondholders, is completely silent on the proposition advanced by him in his lawsuit. ▮ (3) Indeed, nowhere in all of the detailed statutes which command distribution of the proceeds from tax sales is there provision for any distribution to any agency or to any person on account of 1911 Improvement Act bonds. (Rev. & Tax. Code, §§ 3691-3731, 4701-4717.) We conclude that respondent has no statutory right to the proceeds of the tax sale.

### The Principle of Parity

In 1943 the Legislature gave expression to the principle of parity of tax deeds of taxing agencies by enacting section 3900 of the Revenue and Taxation Code, which reads as follows: "It is hereby declared to be the policy of the State and the intent of the provisions in this code contained, that the final tax deed or deeds of all taxing agencies, including counties, cities and counties, cities, irrigation districts, reclamation districts, and other taxing agencies that annually levy, assess and collect taxes or assessments upon real property within the State, should be and they are hereby declared to be upon a parity with each other, and that regardless of when the levy of such taxes or assessments is or has been made, and regardless of when the final tax deed or assessment deed is or has been taken by such taxing agency, that the rights of all taxing agencies and all such deeds shall be equal and upon a parity with each other." The principle had earlier judicial recognition. (*La Mesa etc. Irr. Dist.* v. *Hornbeck*, 216 Cal. 730 [17 P.2d 143].) Respondent argues

that in applying the principle of parity, the Supreme Court has had to use much ingenuity because of the general nature of the principle, and he contends that the court in this case, in order to make the principle meaningful, must fill in a gap in the statutory system (if this court should hold, as we have held above, that respondent's claim to statutory right cannot be sustained) by carrying the application of the parity principle a step beyond the farthest point to which it has hitherto gone.

The cases cited by respondent, which he observes have applied the principle of parity to novel questions which were not specifically answered by statutory provisions, are *Elbert, Ltd.* v. *Clare,* 40 Cal.2d 498 [254 P.2d 20]; *Anger* v. *Borden,* 38 Cal.2d 136 [238 P.2d 976]; *Elbert, Ltd.* v. *Nolan,* 32 Cal. 2d 610 [197 P.2d 537]; *Monheit* v. *Cigna,* 28 Cal.2d 19 [168 P.2d 965, 167 A.L.R. 995].

In *Monheit,* each of the parties held a deed to the property, plaintiff's being a tax deed on sale for delinquent general taxes, defendant's a deed executed by a city treasurer after sale for delinquent special assessments on a 1911 Improvement Act bond. The purchasers were held to be tenants in common, but each to hold an equitable lien against the property to the extent of the amount paid by him. As tenants in common, they would divide equally any excess over the liens. But the bond had been foreclosed, delivered to the treasurer and canceled as required by sections 6621 and 6622 of Revenue and Taxation Code. The equitable lien was imposed in order to effect parity in the dignity of the deeds, although they had different grantors and different dates and were to satisfy assessments of different dates. The holding of tenancy in common, together with reciprocal equitable liens, has been followed in *Elbert, Ltd.* v. *Gawn,* 111 Cal.App.2d 610 [245 P.2d 23]; *Oswald* v. *Salter,* 77 Cal.App.2d 599 [176 P.2d 425]; *Security Investment Co.* v. *Douglas,* 76 Cal.App.2d 592 [173 P.2d 672]; *Cate* v. *Bourzac,* 74 Cal.App.2d 422 [168 P.2d 971]. In each of these cases, as in *Monheit,* there had been tax deeds. No case has applied the parity principle to an unforeclosed lien.

In *Elbert, Ltd.* v. *Nolan, supra,* 32 Cal.2d 610, the court recognized the right of an assessment bondholder to proceed by way of partition instead of by foreclosure (and thus, at that time, to avoid the statute of limitations applicable to foreclosure; this avoidance was eliminated by amendment to section 2911 of the Civil Code (*Scheas* v. *Robertson,* 38

Cal.2d 119, 126-127 [238 P.2d 982]])). But the court also recognized the difference between an unforeclosed lien and the title created by a tax deed (pp. 617-618) and declined to allow the bondholder to share an excess over all the liens on a tenancy in common status, as had prevailed in the *Monheit* case, and limited him to the amount due on his bonds. Respondent argues, however, that in the *Nolan* case, participation was allowed up to the amount of the lien, and that this is all he seeks; but the difference is that in the *Nolan* case, the bondholder received the participation by his action in partition, and not by the theory, which respondent would have us declare, that the officials of the county have the duty (enforceable by writ of mandate if they fail to perform it) to make a proration for him without his taking action by foreclosure or partition.

In *Elbert, Ltd.* v. *Clare, supra,* 40 Cal.2d 498, there had been an unsuccessful foreclosure suit because the treasurer's deed had been void. Against the contention that a second foreclosure action would be necessary, the court allowed this action in partition to proceed, the court holding that since partition is equitable the court could adjudicate the interests of all the parties. The property was ordered sold by designated referees. Thus, the value of the property was established by public sale in a manner similar to that of foreclosure. In our case, respondent has not filed a suit in partition, but has attempted to have the value of his lien established without public sale, as explained more fully below.

Respondent argues that *Anger* v. *Borden, supra,* 38 Cal. 2d 136, is helpful to him (although the ruling has to do with tax liens, not with 1911 Improvement Act bond liens, the only such bond in the case having become extinct by limitation) in this: that the value of the liens was determined as of the time of the *action,* rather than at the time of the tax deed. Thus, says respondent, the value of his lien should be determined as of the time of this action. But, besides the fact that the court carefully pointed out that its ruling went to the particular facts of the case, the action in the *Anger* case was one in partition, one expressly designated as applicable to assessment bond cases by Code of Civil Procedure section 752.

To sum up the cited authorities, no case presented has applied the parity principle against the excess of sale proceeds over the amount of an ad valorem tax lien. But respondent says we should now declare that this is a proper and required application of the parity principle. We do not agree, for several reasons:　　(1) There are specific and

ample statutory remedies for the bondholder. He may compel the treasurer to sell the bond. (Sts. & Hy. Code, §§ 6500-6518.) He may sue to foreclose. (Sts. & Hy. Code, §§ 6610-6623.) These are cumulative remedies. (Sts. & Hy. Code, § 6610.) The bondholder may sue for partition. (Code Civ. Proc., § 752.) These are orderly ways of reducing the bondholder's lien to definitive status. (2) In such actions, the validity of the bond may be tested, and, in particular, the question of the statute of limitations (Civ. Code, § 2911) may be raised. (It may be said that these matters could be considered in the very action that was brought here; but in this action plaintiff seeks declaratory judgment and writ of mandate, on the theory that it is the duty of the county officials to effect a proration for him. If this were their duty, no doubt judicial decision to that effect in this case would require them to perform it in other instances, without the bringing of an action by a bondholder.) (3) Also, foreclosure is an orderly way in which notice may be taken of the priority of special assessment liens, which is determined by section 5373 of Streets and Highways Code. (See *Castle* v. *Schulman*, 32 Cal.2d 222 [195 P.2d 781].) (4) It would not comport with the statutory scheme of enforcement to allow a bondholder to remain aloof, to collect a share of the proceeds of a tax sale which was brought about by a taxing agency, and to withhold his own action or bring it at will. (5) Section 3900 of Revenue and Taxation Code refers to parity of *tax deeds,* following foreclosure of liens. No statute creates parity of an unforeclosed lien with a title deed, and no judicial decision does so. ▪ The principle of parity does not become effective under the facts in this case.

### Unjust Enrichment

The trial court found that to permit the County of Contra Costa to retain the excess received at said sale would impair the security of plaintiff's lien and would unjustly enrich the county. This may be examined under two aspects, the first whether the county has received an unjust sum, and the second whether respondent's lien was unjustly impaired.

▪ As to the first, we find it impossible to conclude that the doctrine of unjust enrichment applies to a county which has simply followed the procedures of statutes, the constitutionality of which is not questioned by respondent. Of course, a surplus above the amount necessary to redeem was received because a buyer at the tax sale chose to pay the higher amount. But the Legislature has provided for the distribu-

tion of any excess to the tax losses reserve fund (Rev. & Tax. Code, § 4711) as a means of recouping losses from sales for less than the amount of taxes. ██ Improvement Act bonds do not participate in the distribution of the excess amounts under section 4711 and, strictly speaking, an improvement assessment is not a tax. (*Northwestern etc. Co.* v. *State Board of Equalization*, 73 Cal.App.2d 548, 552 [16 P.2d 917]; *Wells* v. *Union Oil Co.*, 25 Cal.App.2d 165, 166-167 [76 P.2d 696]; *City of Inglewood* v. *County of Los Angeles*, 207 Cal. 697, 703 [280 P. 360]; *Anaheim Sugar Co.* v. *County of Orange*, 181 Cal. 212, 216 [183 P. 809]; *Los Angeles County Flood Control Dist.* v. *Hamilton*, 177 Cal. 119, 129 [169 P. 1028]; *Holley* v. *County of Orange*, 106 Cal. 420, 426 [39 P. 790].) In particular, this distinction has been applied to assessments under the Improvement Act of 1911. (*City of Pasadena* v. *Chamberlain*, 1 Cal.App.2d 125, 132 [36 P.2d 387].)

██ We do not find validity in respondent's argument that there is nothing in the record of the case to show that the excess proceeds on this particular lot are needed by the county to make up for losses on other property. The legislative plan is an overall one, which does not require such showing in any particular case.

Nor can we conclude that respondent has suffered a loss which would entitle him to recoup the excess that exists in this particular sale. He asserts that immediately after the public auction tax sale, the valid lien for only $152.18 had increased to an equitable lien in favor of the tax buyer in the amount of $870, under the holding of the *Monheit* case. Thus, respondent argues, his own lien has been decreased by the amount of the excess. He points out that the assessed value of the property at the time of sale was $250, and that since the assessment ratio is about 27 percent, the property was worth about $1,000 at the time of the tax sale; that since the tax buyer will be entitled to assert a lien of $870, there is little left for respondent's lien; and that this reverses the true interests of the parties, because before the tax sale respondent's lien was for $1,782.64, and the county's for only $152.18. But, here again, respondent acts on an assumed valuation which has not been resolved in the manner provided by law. The projection of assessed valuation to the market value of the property is not a method recognized by any of the statutes relating to improvement act bonds. If and when the bond is foreclosed in the manner provided by law, with open competitive bidding, it may well be that respondent will

be paid in full. It is observed that a buyer has purchased the property for $870, even though the lien of $1,782.64 remains upon it. If the county were forced to pay over the excess which it received in this sale, and later there should be a sale brought about by foreclosure, at a time selected by respondent within the limitations period, which produced an amount sufficient to pay the whole amount of $1,782.64, plus later accruals, the county would have lost at least the immediate benefit of the funds which the law allows it to retain to offset tax losses. We conclude that respondent had ample statutory remedies, which he did not use, and that he cannot be helped by the equitable doctrine of unjust enrichment.

### Policy Considerations

Arguments relating to policy have been advanced by both sides, appellants contending that affirmance of the judgment would enable land speculators to gain at the expense of taxpayers of a county; and respondent arguing that, to the contrary, speculation will be encouraged, and fair and open bidding at tax sales discouraged unless the judgment is affirmed. But these are policy considerations, the merits of which should be determined by the Legislature, if they are presented to it. We do take notice of one policy argument, because it has to do with procedural matters in the courts. It is contended by respondent that unless bondholders are allowed to share excess proceeds of tax sales, the bondholders will have to race to the court house to commence an action prior to the public auction tax sale. We think this is not necessarily so. The bondholder may very well prefer to hold his bond to a later date. If the bondholder must foreclose, the purchaser at the foreclosure sale (who may be himself) will be vested with a lien on the property to the extent of his bid, which may only be divested by redemption. (Sts. & Hy. Code, § 6517.) But if there is anything in the law on the whole subject which needs correction, the Legislature is the proper body to make it.

Judgment reversed, with directions to the trial court to enter judgment for defendants.

Draper, P. J., and Salsman, J., concurred.

A petition for a rehearing was denied July 27, 1965, and respondent's petition for a hearing by the Supreme Court was denied September 29, 1965.