[Civ. No. 43863. Second Dist., Div. Three. Jan. 31, 1975.]

COUNTY OF SAN BERNARDINO et al.,
Plaintiffs and Appellants, v.
HOUSTON I. FLOURNOY, as State Controller,
Defendant and Respondent.

**COUNSEL**

Stanford D. Herlick, County Counsel, and Robert R. Walker, Deputy County Counsel, for Plaintiffs and Appellants.

Evelle J. Younger, Attorney General, Philip C. Griffin and Mark W. Jordan, Deputy Attorneys General, for Defendant and Respondent.

**OPINION**

ALLPORT, Acting P. J.—The County of San Bernardino and five sanitation districts within its borders filed a complaint for declaratory relief and petition for writ of mandate against defendant the Controller of the State of California, on December 3, 1970, to compel defendant to pay to plaintiffs amounts claimed to be due in reimbursement for their losses resulting from allowance of the homeowner's property tax exemption in the year 1969. By stipulations claims for the years 1970, 1971 and 1972 were included in the action. Answer was filed by

defendant generally denying the allegations of the complaint and affirmatively alleging that the revenues collected by plaintiffs are assessments, not taxes, and that the state Controller should not be required to pay plaintiffs' claims. In September 1973, cross-motions for summary judgment were filed each of which contained an identical stipulation of facts in lieu of supporting declarations required under Code of Civil Procedure section 437c. The trial court granted defendant's motion and denied that of plaintiffs. Judgment was entered in favor of defendant from which plaintiffs appeal.

The sole issue on appeal is whether the exactions for revenue levied by a sanitation district constitute a tax within the meaning of article XIII of the California Constitution since section 1d of this article grants the homeowner's property tax exemption[1] and directs the state to provide by legislation to reimburse local entities for revenues lost by its allowance.[2] Plaintiffs contend that the exaction is a "tax" if all the incidents pertaining to the exaction are considered in making such a determination whereas defendant contends that the exaction is a "special assessment" and not a constitutional tax since it is levied on real property only and as imposed is a charge limited and based upon benefits which accrue to the real property in the district.

---

[1]This article provides in pertinent part:

"There is exempt from taxation the amount of $750 of the assessed value of the dwelling and this shall be known as the homeowners' property tax exemption. The amount of the exemption may be increased or decreased by the Legislature, a majority of all of the members elected to each of the two houses voting in favor thereof, but such exemption shall not be reduced below $750 of such assessed value.

"The Legislature shall provide by general laws for subventions to counties, cities and counties, cities, and districts in this state in an amount equal to the amount of revenue lost by each such county, city and county, city, and district by reason of the homeowners' property tax exemption. No increase by the Legislature in the homeowners' property tax exemption above the amount of $750 shall be effective for any fiscal year, unless the Legislature increases the rate of state taxes in an amount sufficient to provide subventions, and shall provide subventions, during such fiscal year to each county, city and county, city and district in this state a sum equal to the amount of revenue lost by each by reason of such increase.

"Any revenues subvented by the state to replace revenues lost by reason of the homeowners' property tax exemption may be used by a county, city and county, city, or district for state purposes or for county, city and county, city, or district purposes, as the case may be."

[2]The Legislature enacted the general laws as follows: "(a) On or before March 31, 1970, and the last day of March of each year thereafter, the Controller shall draw from the General Fund and pay therefrom to each city and county auditor the amounts claimed on the preceding December 1 pursuant to subdivisions (d) and (e) to reimburse local governmental agencies for the tax loss attributable to the homeowner's property tax exemption. Upon receipt of the payments the respective auditors shall apportion the reimbursement proceeds to the local entities in accordance with the claims previously made." (Stats. 1968, First Ex. Sess., ch. 1, § 33.)

Plaintiffs concede that in *Inglewood* v. *County of Los Angeles,* 207 Cal. 697 [280 P. 360], apparently the only California case which discusses the nature of an assessment levied by a sanitation district, the Supreme Court considered the levy to be a special assessment. They contend, however, that the decision is merely dicta as to the nature of the levy since the prime issue in the case was whether municipally owned property was subject to a sanitation district levy. If a tax, the public property was constitutionally exempt. If an assessment the property was also exempt because the legislation contained no express provision that the public property should bear its share of the special assessment. (*Inglewood* v. *County of Los Angeles, supra,* pp. 703-704.) ■ Nevertheless, the tenor of the case is such that we, as an intermediate appellate court, feel constrained to hold that plaintiff sanitation districts' levies in question are special assessments. In the *Inglewood* case, the Supreme Court said at pages 702-703: "There is a broad and well-recognized distinction between a tax levied for general governmental or public purposes and a special assessment levied for improvements made under special laws of a local character (*San Diego* v. *Linda Vista Irr. Dist.,* 108 Cal. 189 [35 L. R. A. 33, 41 Pac. 291]; *City Street Improvement Co.* v. *Regents, etc.,* 153 Cal. 776 [18 L. R. A. (N. S.) 451, 96 Pac. 801].) As to the former, that is, a tax for governmental purposes, property of a municipality is exempt therefrom by express provision of the constitution of this state and of the Political Code. (Const., sec. 1, art. XIII; Pol. Code, sec. 3607.) These provisions of the constitution and code, however, do not apply to special assessments, and property of a municipality or other property publicly owned may, under certain circumstances, be made liable for special assessments. (*City of San Diego* v. *Linda Vista Irr. Dist., supra; City Street Improvement Co.* v. *Regents, etc., supra; Los Angeles County Flood Control Dist.* v. *Hamilton, supra; City of Pasadena* v. *McAllaster,* 204 Cal. 267 [267 Pac. 873].) The rule is aptly stated by Judge Cooley in the following language: 'While these local assessments are taxed under a taxing power, they are not taxes in the ordinary understanding of that term, and that, consequently, the usual exemptions from taxation will not preclude the property exempt being subject to them.' (Cooley on Taxation, 2d ed., p. 650.)" In *Wells* v. *Union Oil Co.,* 25 Cal.App.2d 165 [76 P.2d 696], the court said at pages 166-167: "The distinction between taxes and special assessments has been clearly made by the courts of California. A tax is a charge placed upon all property, real and personal, lying within a given district or political subdivision. A local assessment is a charge placed upon lands within a given district to pay the benefits which the respective parcels of land derive from a local improvement. (*Holley* v. *County of Orange,* 106

Cal. 420 [39 Pac. 790]; *Los Angeles County Flood Control Dist.* v. *Hamilton,* 177 Cal. 119 [169 Pac. 1028]; *Anaheim Sugar Co.* v. *County of Orange,* 181 Cal. 212 [183 Pac. 809].) Strictly speaking, a local improvement assessment is not a tax at all." (See also *Montgomery* v. *County of Contra Costa,* 235 Cal.App.2d 759, 768 [45 Cal.Rptr. 612].) Finally in *Northwestern etc. Co.* v. *St. Bd. Equal.,* 73 Cal.App.2d 548 [166 P.2d 917], the court quoting from 48 American Jurisprudence, pages 565-567, said at page 552: " 'A special assessment is taxation in the sense that it is a distribution of that which is originally a public burden. Clearly, however, a special or local assessment is not a tax in the sense of a tax to raise revenue for general governmental purposes. Taxes for revenue, or "general taxes" as they are sometimes called by distinction, are the exactions placed upon the citizen for the support of the government, paid to the state as a state, the consideration of which is protection or public service by the state, whereas special or local assessments, sometimes called "special taxes," are imposed upon property within a limited area for the payment for a local improvement supposed to enhance the value of all property within that area.' "

As noted above, article XIII section 1d grants the homeowner's property tax exemption and mandates the state to reimburse localities for the revenues lost through a grant of the tax exemption. ■   Clearly the intention of section 1d is to provide relief for the homeowner of his burden to provide revenue for general governmental purposes. It is not to reduce the payments imposed upon his property for a local improvement which supposedly enhances the value of his property. If persons receiving the benefit offered by the sanitation district received subvention from the granting of the homeowner's property tax exemption, the burden of maintaining the sanitation district would be shifted to taxpayers throughout the state who as such taxpayers do not participate in the benefits accruing to the persons serviced by the districts.

In view of our holding that the levies are assessments rather than taxes and attributable to benefits accruing to the property owners, we find no violation of the equal protection clause of the Constitution. The distinction in allowing subventions with respect to taxes lost as opposed to assessments rests upon a reasonable basis when consideration is given to the nature of the benefits derived from each. (Cf. *Franklin Life Ins. Co.* v. *State Board of Equalization,* 63 Cal.2d 222, 233 [45 Cal.Rptr. 869,

404 P.2d 477]; *Ladd* v. *State Bd. of Equalization,* 31 Cal.App.3d 35, 38 [106 Cal.Rptr. 885].)

The judgment is affirmed.

Cobey, J., and Potter, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied March 26, 1975.