[No. B182727. Second Dist., Div. One. Feb. 27, 2006.]

MARION DRIVE, LLC, Plaintiff and Appellant, v.
MARK J. SALADINO, as Treasurer and Tax Collector, etc., et al.,
Defendants and Respondents;
GEORGE P. GIBSON, as Trustee, etc., Real Party in Interest and
Respondent.

**COUNSEL**

MacCarley & Rosen and Mark MacCarley for Plaintiff and Appellant.

Raymond G. Fortner, Jr., County Counsel, and Halvor S. Melom, Deputy County Counsel, for Defendants and Respondents.

Ronald D. Steinbach for Real Party in Interest and Respondent.

**OPINION**

**VOGEL, J.**—When a bond was sold by a city in 1991 to raise money for street and sewer improvements, a recorded lien attached to a parcel of property. The owner of the property used it as security for a loan in February 2002 but failed to pay either the property taxes owed to the county or the

assessments due to the city for the improvements, and the property was ultimately sold by the county for more than the amount due for taxes. Claims to the excess proceeds were made by the current owner of the bond and by the lender, and the bond owner ultimately filed a petition for a writ of mandate. The trial court ruled in favor of the lender, and the bond owner appeals. We reverse, finding that (notwithstanding a change in the bond's ownership) the bond owner is a "lienholder[] of record prior to the recordation of the tax deed" with priority over the lender's subsequently recorded deed of trust. (Rev. & Tax. Code, § 4675, subd. (e)(1).)

## FACTS

### A.

In November 1989, the City of Glendale adopted a resolution calling for the construction of street and sewer improvements on Marion Drive, the creation of a special assessment district to levy special assessments against the benefited properties, and the issuance of about $160,000 in bonds to fund the project pursuant to the Improvement Act of 1911. (Sts. & Hy. Code, § 5000 et seq.)[1] In July 1991, the City recorded a notice of assessment, thereby creating an assessment lien against Parcel One (unimproved land on Marion Drive then owned by the MacDonald and Charlotte Jean Jones Trust). (Sts. & Hy. Code, § 6446 [the assessment shall be a lien upon the affected property].) Assessment payments from the Jones Trust were due annually, beginning in April 1991 and ending in October 2000. (Sts. & Hy. Code, §§ 6440, 6441.)

In September 1991, the City sold to Fadco Enterprises a $60,000 bond secured by the recorded lien against Parcel One, and the principal and interest payments due on the bond were thereafter payable to Fadco, beginning in January 1992 and continuing through January 2001. (Sts. & Hy. Code, § 6440 et seq.)

### B.

The Jones Trust did not pay any property taxes due to the County of Los Angeles for 1995, 1996, 1997, 1998, or 1999, and stopped making the special assessment payments in 1994. In August 1999, the Jones Trust transferred

[1] "A special assessment is 'a charge imposed on particular real property for a local public improvement of direct benefit to that property . . . .' [Citation.] An 'assessment district' consists of the property or properties to be benefited by such improvement to be specially assessed to bear the expense. [Citations.] An assessment district is formed by local legislative resolution [citation], and provides a compensating benefit to each affected property owner. [Citation.]" (*Russ Bldg. Partnership v. City and County of San Francisco* (1988) 44 Cal.3d 839, 848–849 [244 Cal.Rptr. 682, 750 P.2d 324].)

Parcel One to the Commonwealth Defined Benefit Pension Plan, which did not cure the Jones Trust's defaults and did not make any of the property tax or special assessment payments due after it acquired title to Parcel One.

In July 2001, the Los Angeles County Tax Collector recorded a notice of power to sell tax defaulted property (Parcel One). (Rev. & Tax. Code, §§ 3691, 3707, 3708 [the County has the right to sell tax-defaulted property and to execute a tax deed to the purchaser, which extinguishes the property owner's right of redemption].)[2] The County initiated proceedings to sell Parcel One, set the sale date (February 25, 2002), and gave notice that the amount due to the County was $16,395.48 (which did *not* include the $112,341.43 obligation owed to Fadco as owner of the bond).

Ten days before the sale (on February 14, 2002), Commonwealth purportedly borrowed $100,000 from the Gibson Family Trust and secured its obligation with a deed of trust on Parcel One. The deed of trust (naming the Gibson Trust as beneficiary) was recorded on February 15.

At a tax sale held on February 25, the County sold Parcel One to Philip Sardo for $106,000 (which obviously exceeded the $16,395.48 owed to the County). A tax deed to Sardo was recorded on April 29. (§ 3712; and see *Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 39–40 [77 Cal.Rptr.2d 709, 960 P.2d 513].)[3]

On June 28, Fadco Enterprises sold and assigned its bond (still secured by Parcel One) to Marion Drive, LLC, for $114,306.74. (§ 3712.) Marion Drive, LLC, is owned by Philip Sardo. On September 27, Sardo conveyed Parcel One to Marion Drive, LLC, and that deed was recorded on October 7.

## C.

In November 2002, Marion Drive (as the owner of the bond) filed a claim for excess proceeds (for $114,306.74) with the County (§ 4675). In February

---

[2] Subsequent undesignated section references are to the Revenue and Taxation Code.

[3] As relevant, section 3712 provides: "The deed conveys title to the purchaser free of all encumbrances of any kind existing before the sale, except: [¶] (a) Any lien for installments of the taxes and *special assessments*, which installments will become payable . . . after the time of the sale. [¶] (b) The lien for taxes or *assessments* or other rights of any taxing agency which does not consent to the sale under this chapter. [¶] (c) *Liens for special assessments levied upon the property conveyed which were, at the time of the sale under this chapter, not included in the amount necessary to redeem the tax-defaulted property* . . . . [¶] (f) *Unpaid assessments under the Improvement Bond Act of 1915 (Division 10 (commencing with Section 8500) of the Streets and Highways Code)* which are not satisfied as a result of the sale proceeds being applied pursuant to Chapter 1.3 (commencing with Section 4671) of Part 8 [of the Revenue and Taxation Code] . . . ." (Italics added.)

2003, the City filed a similar claim.[4] In September 2003, the County denied Marion Drive's claim on the ground that it had to be pursued by the City, not the bond owner. In December, the City assigned its claim to Marion Drive, but the County refused to pay it.

In December 2003, Marion Drive filed a petition for a writ of mandate in which it asked for an order directing the County to distribute the excess proceeds to it. The petition, which was opposed by the Gibson Trust, was denied, and this appeal by Marion Drive is from the judgment thereafter entered.

## DISCUSSION

Marion Drive contends the bond lien trumps the subsequently recorded deed of trust and that Marion Drive, not the Gibson Trust, is entitled to the excess proceeds from the tax sale. We agree.

### A.

Before 1976, postcost proceeds from a tax sale were apportioned to the taxing agencies according to the amount of taxes necessary to redeem the property at the time of the sale, and any excess proceeds were distributed among the taxing agencies in the same proportion. (Former § 4674, repealed by Stats. 1976, ch. 113, § 4, p. 176.) Neither the owner nor any nontaxing claimant had any right to any part of the excess proceeds. (*Chesney v. Gresham* (1976) 64 Cal.App.3d 120, 131 [134 Cal.Rptr. 238].)

Under those rules, a bondholder received a share of the excess proceeds only when the bondholder's lien was canceled by the sale. Because "nowhere in all of the detailed statutes which command[ed] distribution of the proceeds from tax sales [was] there provision for any distribution to any agency or to any person on account of 1911 Improvement Act bonds," the rule (as articulated by one court) was that the bondholder was not entitled to share in the excess proceeds. (*Montgomery v. County of Contra Costa* (1965) 235 Cal.App.2d 759, 763–764 [45 Cal.Rptr. 612].)

### B.

■ The rules changed in 1976. (Stats. 1976, ch. 113, §§ 4–6, pp. 176–177; Legis. Counsel's Dig., Assem. Bill No. 2352 (1975–1976 Reg. Sess.) 4 Stats. 1976, Summary Dig., p. 29.) Now, taxes and assessments are paid first

---

[4] Although it is not in the record, it appears that either Commonwealth or the Gibson Trust also filed a claim with the County.

(§§ 4671–4673.1) and the excess, if any, is paid into a trust fund (§ 4674). "Any party of interest in the property may file with the county a claim for the excess proceeds, in proportion to his or her interest held with others of equal priority in the property at the time of sale, at any time prior to the expiration of one year following the recordation of the tax collector's deed to the purchaser." (§ 4675, subd. (a).) At the end of the one-year period, the excess proceeds are distributed first to "lienholders of record prior to the recordation of the tax deed to the purchaser in the order of their priority" (§ 4675, subd. (e)(1)), then to "any person with title of record to all or any portion of the property prior to the recordation of the tax deed to the purchaser" (§ 4675, subd. (e)(2)). Assignments are permitted. (§ 4675, subd. (b).) For this reason, the rule articulated in *Montgomery v. County of Contra Costa, supra,* 235 Cal.App.2d 759 no longer applies.

Marion Drive's bond lien was recorded in *July 1991.* The tax sale deed was recorded in *April 2002.* The Gibson Trust is either (1) a lienholder (pursuant to its deed of trust) or (2) a "person with title of record to [a] portion of the property" (a security interest), but either way has an interest that was not recorded until *February 15, 2002,* more than 10 years after Marion Drive's lien was recorded. Marion Drive thus has the senior interest of record. (§ 4675, subd. (e)(1), (2).)

## C.

To avoid this conclusion, the Gibson Trust relies on *Montgomery v. County of Contra Costa, supra,* 235 Cal.App.2d 759, insisting that it survives the Legislature's adoption of the current statutory scheme. It does not.

*Montgomery v. County of Contra Costa, supra,* 235 Cal.App.2d at page 764, is based in significant part on the fact that, before 1976, the "detailed statutes" governing the distribution of excess funds following a tax sale permitted distribution only to taxing agencies—and not to bondholders or lienholders or former owners or anyone else. Taxing agencies got it all, and that was the end of the discussion. Conversely, the current statute expressly provides for the distribution of excess proceeds to "lienholders of record prior to the recordation of the tax deed to the purchaser in the order of their priority." (§ 4675, subd. (e)(1).)

■ It is undisputed that Marion Drive (as the owner of the 1991 bond, and as the assignee of the City's interest in that bond) is a "lienholder[] of record prior to the [April 2002] recordation of the [February 2002] tax deed," and undisputed that the interest of the Gibson Trust (as the owner of a deed of trust recorded on February 15, 2002) is junior to Marion Drive's interest. It follows necessarily that Marion Drive is entitled to the excess proceeds and that the Gibson Trust is not.

## D.

The Gibson Trust contends Marion Drive's lien was extinguished by the "doctrine of merger." We disagree.

### 1.

To recap the relevant dates:

The assessment lien was recorded in 1991, at which time the Jones Trust owned Parcel One and Fadco Enterprises owned the bond secured by Parcel One.

In 1999, Commonwealth acquired Parcel One.

In February 2002, Parcel One was sold to Philip Sardo for $106,000, and the tax deed to Sardo was recorded in April 2002.

In June 2002, Marion Drive purchased the improvement bond for $114,306.74.

In September 2002, Sardo conveyed Parcel One to Marion Drive.

Thus, at the time of the February tax sale and the April recordation of the tax sale deed, the bond was owned by Fadco and Parcel One was owned by Sardo. It was not until June that Marion Drive acquired the bond, and not until September that Marion Drive acquired Parcel One.

### 2.

The Gibson Trust claims that, by "purchasing the unforeclosed 1911 Improvement Act Bond after the tax sale, [Marion Drive] has merged the lien into its fee title, such that the lien no longer exists [because it] makes no sense to foreclose against oneself, or to re-assign the bond so that [Marion Drive] is subject to foreclosure." There are at least three problems with this argument.

First, the right at issue in this case—to recover the excess fund created by the tax sale of Parcel One—vested as of the date of the tax sale. (§ 4675, subd. (e)(1) [the first priority of distribution is to "lienholders of record prior to the recordation of the tax deed to the purchaser in the order of their priority"].) When the tax sale deed was recorded (April 2002), the bond was owned by Fadco Enterprises and the property was owned by Sardo. As a result, there was no merger at that time—and none of the authorities cited by the Gibson Family Trust (*Sheldon v. La Brea Materials Co.* (1932) 216 Cal.

686, 689–690 [15 P.2d 1098]; *Estate of Washburn* (1909) 11 Cal.App. 735, 746 [106 P. 415]; *Anglo-Californian Bank v. Field* (1905) 146 Cal. 644, 653 [80 P. 1080]; *Union Bank v. Wendland* (1976) 54 Cal.App.3d 393, 406 [126 Cal.Rptr. 549]) support its claim that a *subsequent merger,* if there was one, could affect Marion Drive's statutory priority.[5]

Second, Marion Drive's dual status (as not only the owner of the bond but also as the assignee of the City, a taxing agency) precludes application of the merger doctrine. (§ 3712, subds. (c), (f) [unpaid assessments and liens for special assessments "of any taxing agency" are not extinguished by the tax deed].) There could be no merger vis-à-vis the City.

Third, the Gibson Trust's suggestion of "fraud or sharp dealing" finds no support in the record, and there is nothing unfair or unjust about this transaction. When Sardo purchased Parcel One at the tax sale, he paid $106,000 to the County, which was more than enough to fully reimburse the County for all delinquent property taxes (and the fact that the property appears to have been worth more than the amount paid is irrelevant).[6] When Marion Drive purchased the bond from Fadco, it paid $114,306.74, which was apparently the value of the bond in June 2002. Because the interest payments on the bond have been delinquent since shortly after the bond was sold to Fadco, no one paid the interest due on the bond to either Fadco Enterprises or Marion Drive, which means the payment of the excess tax sale proceeds to Marion Drive will not result in a windfall or double recovery.

There was no merger.[7]

---

[5] The doctrine of merger provides that when a greater and lesser estate coincide and meet in one and the same person without any intermediate estate, the lesser is merged into the greater; when the holder of a lien acquires the estate of the lienor, the lien interest is merged in the fee and the lien is extinguished. (*Sheldon v. La Brea Materials Co., supra,* 216 Cal. at pp. 689–690.) To apply this rule to this case, the dispositive date would have to be September 2002—when Marion Drive became the owner of both the bond and Parcel One. Neither law nor logic suggests a reason for using September as the dispositive date.

[6] Shortly after the property was purchased, it was on the market for almost $700,000. This is hardly surprising, since property purchased at a tax sale is taken "as is." (Greenwald & Asimow, Cal. Practice Guide: Real Property Transactions (The Rutter Group 2005) ¶¶ 4:37.5–37.6, pp. 4-7 to 4-8; *Lingsch v. Savage* (1963) 213 Cal.App.2d 729, 742 [29 Cal.Rptr. 201] [the use of an "as is" provision suggests the property may be in some way defective and that the buyer takes it at his own risk].)

[7] Our conclusion that Marion Drive's bond has priority over the Gibson Family Trust's deed of trust makes it unnecessary to consider Marion Drive's alternative claim that the deed of trust is invalid because Commonwealth never owed the supposedly secured debt ($100,000) to the Gibson Trust.

## DISPOSITION

The judgment is reversed and the cause is remanded to the trial court with directions to vacate its judgment denying Marion Drive's petition and to enter a new judgment in favor of Marion Drive in which the County is directed to distribute the excess proceeds (up to the amount owing on the bond) to Marion Drive. Marion Drive is awarded its costs of appeal, payable by the Gibson Trust (not the County).

Spencer, P. J., and Mallano, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied May 24, 2006, S142313.